John J. KOMOSA, Employee
(Plaintiff), Respondent,

v.

MONSANTO CHEMICAL COMPANY, Employer, and Liberty Mutual Insurance Company, Insurer (Defendants), Appellants.

No. 29737.

St. Louis Court of Appeals.

Missouri.

Oct. 1, 1957.

Motion for Rehearing or for Transfer to Supreme Court Denied Oct. 29, 1957.

———◆———

Evans & Dixon, John R. Dixon, and Gerald A. Rimmel, St. Louis, for appellants.

Paul H. Koenig and William B. Quinn, St. Louis, for respondent.

MATTHES, Judge.

The Monsanto Chemical Company, employer, and Liberty Mutual Insurance Company, insurer, have appealed from an order of the circuit court overruling a motion to quash an execution and garnishment in aid thereof which were issued to effect collection of a judgment in a Workmen's Compensation proceeding.

The employee, John J. Komosa, respondent herein, was involved in an accident, arising out of and in the course of his employment, on July 17, 1950, from which an injury to his back resulted. On April 21, 1953, the employee filed claim for compensation in which he alleged that to the date of the filing of the claim no temporary disability had resulted; that the weeks of "probable future temporary disability" were unknown; and that the nature of any permanent injury was undetermined. He claimed compensation "As per Act". The employer and insurer filed their answer to the claim alleging that the "nature and extent of injury" were to be determined by the Division of Workmen's Compensation.

At the hearing of the claim before the referee on February 4, 1954, the evidence disclosed that the employee returned to work on the day following the accident, and worked continuously until the time of the hearing, performing the same type of work as he had prior to the accident; there is no evidence in the record to indicate that employee lost any wages as a result of the accident or the resulting injury. The employer and insurer provided all necessary medical care for the injury sustained.

On the question of the nature and extent of the injury sustained by employee there was a conflict in the medical testimony. Dr. Samson Wennerman testified that he had seen the employee for examination on six occasions over a period of eight months up to the date of the hearing. His conclusion was that as a result of the accident, the employee had sustained an injury to his back resulting in a permanent partial disability of 40% of his body as a whole. On the other hand, Dr. Leonard Furlow, on behalf of the employer and insurer, testified that he had, after two examinations, reached the conclusion that the employee had sustained a permanent partial disability of 15% of his body as a whole. Dr. Furlow entertained the opinion that the employee's disability was more functional than organic.

On February 17, 1954, the referee entered an award "for permanent partial disability in the sum of $25 per week for 85⅓ weeks, * * * said payments to begin as of July 18, 1950." The award was made subject to a lien in favor of employee's attorney in an amount equal to 33⅓% of $133.33 for legal services rendered employee. In his findings the referee found the total amount due the employee was $2,133.33. There was no award of temporary total disability, and no findings by the referee that any was due.

The employee, being dissatisfied with the amount of the award of the referee, filed an application for review, bearing date of February 24, 1954. The employer and insurer filed an answer to the application for review wherein they requested the Industrial Commission of Missouri to reduce the award.

The Industrial Commission affirmed the award of the referee by its order entered on April 15, 1954. From this action employee prosecuted his appeal to the Circuit Court of the City of St. Louis, where, on June 13, 1955, that court entered its order approving and confirming the award and findings of the Industrial Commission. In due time the employee appealed to this court, where the judgment of the circuit court was affirmed on February 21, 1956. See, Komosa v. Monsanto Chemical Co., Mo.App., 287 S.W.2d 374. The mandate of this court was forwarded to and received by the Clerk of the Circuit Court on March 14, 1956, and filed by him on March 20, 1956.

The Honorable Thomas L. Sullivan, an attorney at law, who then represented the employee, filed an affidavit in the circuit court stating that as of April 4, 1956, there was due, on account of the award, the sum of $2,133.33, plus interest in the amount of $628.43, or a total of $2,761.76. In said affidavit it is stated:

> "There is due and unpaid on the judgment of 85⅓ weeks of compensation at $25.00 per week beginning the 18th day of July, 1950, the principal of $2133.33, plus the interest thereon at 6% according to Sec. 187.160-2 R.S. Mo.1949.
>
> "On the initial period of 85⅓ weeks from 7-17-50 to 3-7-52 there is due interest in the amount of $106.59 for the weekly amounts due for the varying periods of from 1 to 85 weeks. The 6% interest on the principal of $2133.33 is $128.00 per year or $2.46 per week.
>
> "There is due on April 4, 1956, the following:

| | |
|---|---|
| Principal | $2,133.33 |
| Interest 7-17-50 to 3-7-52 | 106.59 |
| Interest 3-8-52 to 3-7-56 (4 x 128.00) | 512.00 |
| Interest 3-9-56 to 4-4-56 (4 x 2.46) | 9.84 |
| | $2,761.76" |

Immediately upon the filing of this affidavit the Circuit Clerk issued a writ of execution directed to the Sheriff of the City of St. Louis commanding him to levy on the goods and chattels and real estate of Monsanto Chemical Company and Liberty Mutual Insurance Company to the extent of $2,761.76, plus costs in the amount of $15.65. To this writ the Sheriff filed a nulla bona return. Thereupon, a writ of garnishment in aid of execution was served by the Sheriff on the Boatmen's Bank, returnable the first Monday in June, 1956. It was to this writ of execution and garnishment that the employer and insurer filed their joint motion to quash. Said motion alleged that the award in question had been paid and that no interest, either before or after the award, was due the employee. To this motion the employee filed an answer which, in general, denied the allegations of said motion.

On March 1, 1954, Mr. C. Lawrence Mueller, who then represented the employer and insurer, wrote Mr. Sullivan as follows:

> "This is to confirm our telephone conversation of February 25, 1954, to the effect that the Liberty Mutual Insurance Company, who this office represents, is agreeable to paying the award as written by the referee in the above captioned case."

To this letter, Mr. Sullivan replied under date of March 2, 1954, as follows:

> "My client is willing to accept any money you wish to pay on the award as written. He will give you a receipt for the monies paid. He will not, of course, dismiss his appeal or sign any papers indicating that he is ceasing in the appeal of the case."

Upon receiving this letter, Mr. Mueller instructed the claims office of the Liberty Mutual Insurance Company to issue a check to Mr. Komosa and his attorney, Mr. Sullivan. Pursuant to these instructions, a check, numbered D-2922, was sent to Mr. Komosa and Mr. Sullivan. It was

in the amount of $2,133.33 and bore a notation on it stating: "Settlement as per award." This check was returned by Mr. Sullivan with a letter dated March 21, 1954, the material portions of which are as follows:

"The check bears the clause 'Settlement as per award.' I suppose this is an attempt to stop the running of interest on the case. There is now due as per work sheet attached (or was 3-13-54) $365.05 interest.

"My client is willing to accept any payment on the award that you wish to make at this time but is not willing to settle the case so as to stop his appeal in the case.

"If you will remove the word 'settlement' from the check and return it with your letter that the payment is not to be construed as a settlement of the claim or an acceptance of the award as is, my client will be pleased to accept the check."

Attached to this letter was a paper entitled "Interest calculation." According to this, $365.05 was calculated by Mr. Sullivan to be due on the award of February 17, 1954, for the period beginning July 18, 1950, to March 13, 1954.

After receipt of this letter Mr. Mueller instructed the claims office of the Liberty Mutual Insurance Company to issue a new check to Mr. Komosa and Mr. Sullivan with the word "settlement" removed. A new check, dated March 29, 1954, numbered D-3492, in the sum of $2,133.33, payable to John Joseph Komosa and his attorney, Thomas L. Sullivan, was sent to Mr. Sullivan. The word "settlement" was not on the check, but it did bear the notation, "as per award (85 wks. at $25.00)." No communication accompanied the check. Mr. Sullivan stated that he received this check and had retained it to the date of the hearing. He testified further that although he had requested a letter from the Liberty Mutual Insurance Company stating that the acceptance of the money would not be taken as a dismissal or conclusion of the proceedings, such a letter was not forthcoming. He also stated that he did not intend to deposit the check or channel it through banks for payment because of the case of Fear v. Ebony Paint Mfg. Co., 238 Mo.App. 560, 181 S.W.2d 559. No order was ever issued by the Liberty Mutual Insurance Company stopping payment on the check. At the trial an offer of proof was made that upon the issuance of the check in question, a reserve was set up by the insurance company to cover the amount of the check which was available thereafter to meet its payment. Evidence was also introduced showing the financial stability of the Liberty Mutual Insurance Company and its ability to honor and pay the check if and when presented for payment.

On March 2, 1956, Mr. Mueller wrote Mr. Sullivan requesting that he and his client sign final receipts required by the Industrial Commission. This request was refused, and on March 3, 1956, the blank receipts were returned by Mr. Sullivan to Mr. Mueller, and at the same time Mr. Sullivan demanded payment of interest from July 18, 1950, to March 7, 1956, in the sum of $618.59. At no time did Mr. Mueller, on behalf of his clients, offer to pay interest on the award, it being his position that the employee was not entitled to any interest.

At the conclusion of the hearing on the motion to quash the execution, the matter was taken as heard and submitted. From the order thereafter entered overruling the motion to quash, this appeal followed.

Appellants contend that the court erred in failing to quash the writ of execution and garnishment so far as it sought to impose a lien for interest from the date of accident to the date of the entry of the award. In support of this contention it is urged that since the award was for permanent partial disability, the extent of which could only be known when deter-

mined by the referee, no compensation was due prior to that time and hence no interest could be allowed for any period prior to that date.

■ In asserting his right to the questioned interest, the employee advances the argument that inasmuch as the award of the referee, as affirmed by the Industrial Commission and finally by the courts, specifically and unequivocally found that employee had sustained an accidental injury on July 17, 1950, resulting in a permanent partial disability, and had further found that the employee was entitled to compensation for 85⅓ weeks beginning "as of July 18, 1950"; that under the plain and clear provisions of Section 287.160 (all statutory references are to RSMo 1949, V.A.M.S.), interest must be computed on unpaid installments from that date. It will be seen that Section 287.160 (2) provides: "Compensation shall be payable as the wages were paid prior to the injury, but in any event at least once every two weeks. Each installment shall bear interest at the rate of six per cent per annum *from the date when due until paid."* (Unless otherwise indicated all italics herein are supplied.) Thus the question is, did the order and award of the Industrial Commission, as affirmed by the courts, have the effect, within the meaning of Section 287.160(2), of fixing July 18, 1950, as the due date of the installments? If so, employee was and is clearly entitled to interest on unpaid installments from that date.

Appellants and respondent rely with equal sincerity on the cases of Floyd v. A. Y. McDonald Mfg. Co., 226 Mo.App. 444, 46 S.W.2d 251; and Walker v. Pickwick Hotel, Mo.App., 211 S.W.2d 55. The Floyd case involved an award for the death of the claimant's wife. The injury causing the death occurred on February 27th or 28th, 1930. The final award of the commission was entered on August 11, 1930, and on appeal the circuit court affirmed the award, with interest at the rate of 6% from the *date of the final award of the*

*commission.* On appeal to the Kansas City Court of Appeals the employer and insurer urged that the court committed error in allowing claimant any interest. This contention was summarily disposed of by the statement that, "There is no merit in this contention", 46 S.W.2d loc. cit. 256. We do not regard that case as decisive of the question presented to us because the right to interest from date of *accident* was not an issue. In the Walker case the claimant, as here, sustained an injury which resulted in permanent partial disability. Following hearings upon the extent of claimant's disability, the Industrial Commission entered a final award based upon 40% permanent partial disability of claimant's left knee. When the case reached the Kansas City Court of Appeals, that court was requested to order interest paid upon the award. It will be observed that the court pointed out that "The final award was that he should receive the sum of $19.24 per week for 64 weeks, said payments to begin as of *December 31, 1944.* The Circuit Court's judgment affirmed said final award," 211 S.W.2d loc. cit. 58. After stating that no compensation installments had been paid, the court then stated: "The statute is clear and explicit on the matter (payment of interest) and we assume that employer and insurer will comply with its terms," 211 S.W.2d loc. cit. 58.

While the Walker case has some distinguishing features, such as the entry of an award for temporary or partial compensation prior to the entry of the final award by the Industrial Commission, we cannot escape the conclusion that the decision throws considerable light upon the issue under consideration, and supports the position of the employee. Although the court did not precisely spell out that the employee was entitled to interest from the date fixed by it for the commencement of compensation installments, it seems clear that when the opinion is considered in light of the facts presented, no other logical interpretation can be placed on the court's holding.

Reverting to the statute under consideration, it will be seen that each installment of compensation shall bear interest from the date *when due* until paid. The legislature, in dealing with the subject, did not provide that an award for permanent partial disability should in all cases bear interest from the date of the *award*, which is the effect of the contention advanced by appellants, neither did the lawmaking body feel it proper to require that in all cases the award should carry interest from the date of the *accident*. Instead of fixing an arbitrary due date for interest-paying purpose in all situations regardless of the attending circumstances, the legislature chose to simply provide that compensation installments shall bear interest from the date when due, thus leaving the way open for a determination of that matter in those cases where the issues presented require an adjudication of the question. Walker v. Pickwick Hotel, supra, bears out this conclusion. There the due date was not fixed as of the time when the accident occurred, which was December 9, 1944, or on the date of the final award which was some time in 1946. Rather, the commission, under the facts presented, found that the compensation payments became due as of December 31, 1944. So there may be situations when the commission may determine that because of the circumstances surrounding the claim, the interest on the installments should not antedate the time the award is entered. Again, it may be between the occurrence of the accident and the final award. Or, as in this case, the commission may determine that the compensation installments became due on the day following the accident, and that interest should run accordingly. Employer and insurer in oral argument, through counsel, conceded that under certain circumstances involving a permanent partial disability, such as the loss of a member of the body where the amount of compensation is readily ascertainable upon the happening of the event, the employee would be entitled to interest from the date of the accident, but they are unyielding in their position that in all other permanent partial cases, regardless of the circumstances, interest cannot predate the award. It should be sufficient to say that the statute fails to recognize this distinction.

■ It follows from what has been said that, subject to review by the courts, the Industrial Commission is vested with authority to determine the due date. In view of the flexible provision of the statute, this must be the rule unless it can be said that as a matter of law in all cases, regardless of the circumstances, interest will be allowed from either the date of the accident, or the date of the entry of the award. We cannot bring ourselves to hold that such was the intent of the legislature.

■ Through able counsel appellants also vigorously insist that Section 287.160(2) contemplates that "interest is limited in compensation awards under the Missouri Act to awards for temporary total disability or temporary partial disability—that is, to weekly payments which are made in lieu of wages or earnings lost". We cannot adopt this theory. Again the statute makes no distinction between the types of compensation awards that shall bear interest. By clear and explicit language the statute applies to awards for *all* types of injuries.

■ Employer and insurer failed in any manner to challenge the final award of the Industrial Commission or any phase thereof. To the contrary, they sought to and did uphold the award in its entirety in the circuit court and again in this court. The award having been affirmed, it became final and conclusive as to *all matters* thereby adjudicated. Winschel v. Stix, Baer & Fuller Dry Goods Co., Mo.App., 77 S.W.2d 488, loc. cit. 491; Brammer v. Binkley Mining Co. of Mo., Mo.App., 244 S.W.2d 584, loc. cit. 589, 590.

■ The second point raised is that the court erred in failing to quash the writ of execution and garnishment to the extent that said writ sought the collection of the

principal amount, namely, $2,133.33. It is the position of appellants that because the employee, through his attorney, received and retained the check of insurer in said amount, the award has been paid.

In our judgment, there is no merit to the point made. The law applicable is stated in Rettinghouse v. Krey Packing Co., Mo. App., 200 S.W.2d 584, loc. cit. 586, as follows:

"The law is well settled that the payee's mere acceptance of his debtor's check will not constitute payment of the debt in the absence of an express agreement to that effect, and that without such agreement or consent, which may be shown from the circumstances and conduct of the parties, the debt is not discharged until the check is in fact paid in due course." (Citing cases.)

In the case at bar there was no agreement, express or implied, that the check would be accepted as payment. There was an offer by the employee to accept a payment on the award if insurer would "remove the word 'settlement' from the check and return it with your letter that the payment is not to be construed as a settlement of the claim or an acceptance of the award as is * * *." The insurer later issued a new check with the word "settlement" removed, but failed to write a letter giving the assurances requested as a condition for acceptance of the check. Clearly, there was no agreement to accept the check as payment. Nor did the employee accept it as payment by merely failing to return it to insurer. Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631, loc. cit. 638.

The final issue raised by this appeal is the question of interest subsequent to the entry of the award of the referee on February 17, 1954. Appellants contend that interest during the pendency of the employee's various appeals should not be allowed. The point is well taken.

Where a judgment creditor is dissatisfied with the amount of an award or judgment and appeals on the ground of inadequacy, then, if the judgment is affirmed, he is held not entitled to interest on the judgment or award pending the appeal. State ex rel. Southern Real Estate & Financial Co. v. City of St. Louis, 234 Mo.App. 209, 115 S.W.2d 513; In re Thomasson's Estate, Mo.Sup., 192 S.W.2d 867. Here, Mr. Komosa, the employee, being dissatisfied with the amount of the award of the referee, took successive appeals to the Industrial Commission, the Circuit Court, and to this court. All of these appeals were fruitless and the original award of February 17, 1954, was affirmed by each appellate tribunal. The employee, as judgment creditor, created the situation whereby the award in question could not be satisfied and the judgment debtor discharged. On these facts, under the above cited authorities, he was not entitled to interest during the period his appeals were pending.

The order of the trial court overruling the motion to quash is affirmed in all respects, except as to the amount of interest pending the employee's appeals and, as to that, the order is reversed and the cause remanded with directions to enter an order quashing the execution as to said interest amounts and amending the execution in accordance therewith.

RUDDY, P. J., and ANDERSON, J. concur.