John J. KOMOSA, Employee, Respondent,

v.

MONSANTO CHEMICAL COMPANY, Employer, and Liberty Mutual Insurance Company, Insurer, Appellants.

No. 46658.

Supreme Court of Missouri,

En Banc.

Nov. 10, 1958.

Evans & Dixon, John R. Dixon, St. Louis, Gerald A. Rimmel, St. Louis, for appellants.

Paul H. Koenig, St. Louis, and William B. Quinn, St. Louis, for respondent.

STORCKMAN, Judge.

This is an appeal by the employer, Monsanto Chemical Company, and its insurer, Liberty Mutual Insurance Company, from a judgment of the Circuit Court overruling a motion to quash an execution issued to enforce collection of an award for permanent partial disability in a workmen's compensation case. The appeal was transferred from the St. Louis Court of Appeals after the rendition of the opinion reported in Mo.App., 305 S.W.2d 506. The questions presented relate to the allowance of interest on the award. The essential facts are not in dispute.

On July 17, 1950, the employee received an accidental injury to his back arising out of and in the course of his employment. He continued to work and lost no wages, but was furnished with medical service by the employer. On April 21, 1953, the employee filed a claim for compensation alleging there had been no temporary disability to date and the exact nature of any permanent injury was undetermined and claiming compensation "As per Act." The answer of the employer and insurer stated the nature and extent of the injury was to be determined.

The trial of the claim began on February 4, 1954, before a referee of the Division of Workmen's Compensation. On February 17, 1954, an award was rendered in favor of the employee for compensation as follows: "For Permanent Partial Disability the sum of $25.00 per week for 85⅓ weeks. * * * said payments to begin as of July 18, 1950, and to be payable and to be subject to modification and review as provided in said Law." In his findings of fact, the referee stated the "amount of compensation payable" to be $2,133.33.

The employee filed an application for review with the Industrial Commission of Missouri claiming the award to be inade-

quate. The employer and insurer filed an answer to the application requesting the Commission to reduce the award. On April 15, 1954, the Industrial Commission affirmed the award and on employee's application, struck from the record the answer of the employer and insurer as not being timely filed. The employee then appealed to the Circuit Court of the City of St. Louis, which Court on June 13, 1955, entered its judgment approving and confirming the findings of the Industrial Commission. In due time the employee appealed to the St. Louis Court of Appeals, which rendered its opinion on February 21, 1956, affirming the judgment of the Circuit Court. See Komosa v. Monsanto Chemical Company, Mo.App., 287 S.W.2d 374.

On April 5, 1956, the employee's attorney filed with the clerk of the Circuit Court his affidavit setting out the amount claimed to be due on the award with interest and requested that execution be issued. The affidavit stated that: "On the initial period of 85-1/3 weeks from 7–17–50 to 3–7–52 there is due interest in the amount of $106.-59 for the weekly amounts due for the varying periods of from 1 to 85 weeks." Interest on the aggregate sum of $2,133.33 was claimed after March 7, 1952, the date when the last weekly installment matured according to the terms of the award. The total amount claimed with interest as of April 4, 1956, was $2,761.76.

The employer and insurer filed their joint motion to quash the writ of execution and garnishment issued in aid thereof, alleging in substance that no interest was due either before or after the award was made and that the judgment had been paid. The motion to quash was overruled on July 23, 1956, and in due course the employer and insurer took this appeal. Further evidence will be stated in the course of the opinion, and reference is made to the opinion of the St. Louis Court of Appeals for a more detailed statement. Mo.App., 305 S.W.2d 506.

The employee contends that he is entitled to interest at six per cent on each installment of compensation from the respective maturity dates as designated by the award until paid, relying on these provisions of section 287.160 RSMo 1949, V.A. M.S.:

"2. Compensation shall be payable as the wages were paid prior to the injury, but in any event at least once every two weeks. Each installment shall bear interest at the rate of six per cent per annum from the date when due until paid."

The interest claimed falls generally into three categories. First, the period between the maturity date of the first installment and the date of the award. Second, the time during which the employee's appeals were pending; and, third, the time subsequent to the affirmance of the award by the St. Louis Court of Appeals.

The second period mentioned is most readily disposed of. Counsel for the employee quite properly conceded in oral argument that the employee was not entitled to interest on the award during the time his appeals to the Industrial Commission, the Circuit Court, and the St. Louis Court of Appeals were pending. The law is well settled that where a judgment creditor appeals on the grounds of inadequacy from a recovery in his favor, and the judgment is affirmed, he is not entitled to interest pending the appeal. State ex rel. Southern Real Estate & Financial Co. v. City of St. Louis, 234 Mo.App. 209, 115 S.W.2d 513, 515 [3]; In re Thomasson's Estate, Mo., 192 S.W.2d 867, 869 [1]; 47 C.J.S. Interest § 59, p. 69.

This construction applies equally to the general and special interest statutes and is justified in these circumstances because the judgment creditor by his own act delays and prolongs the proceedings and renders satisfaction of the judgment impossible. State ex rel. Southern Real Estate & Financial Co., supra.

We have further concluded that the trial court erred in failing to quash the execu-

tion to the extent that it included interest prior to the rendition of the award on February 17, 1954.

The award provided that the weekly payments should begin "as of July 18, 1950," which was the day after the employee was injured, and should continue for 85⅓ weeks. The award purported to do two things. It determined the total amount of compensation for permanent partial disability to which the employee was entitled in accordance with the provisions of § 287.-190. The number of weeks of benefits allowed was the yardstick by which the total amount of permanent partial compensation was measured. It also designated the time "as of" which the installments of compensation were "to begin * * * and be payable."

Ordering the compensation payable retroactively had the effect of maturing all the installments so they would not be subject to modification (§ 287.470), and the employee would receive the compensation allowed in a lump sum without commutation (§ 287.530). The employee also contends that the order fixing the date "as of," which the various installments accrued, had the effect of fixing the time "when due" within the meaning of § 287.160 so as to start the running of interest.

Clearly the provisions of § 287.160 set out above require the payment of interest on installments of compensation from the time they become due. But the precise question with which we are concerned is whether the Act fixes the time when compensation for this sort of permanent partial disability becomes due within the meaning of § 287.160. The provision that "compensation shall be payable as wages were paid prior to the injury" does not do so, because the time during which the compensation was ordered to be payable does not, and could not, coincide with the duration of the disability as in the case of temporary disability. The disability was permanent, but the compensation ran for only 85⅓ weeks. In this case the pay-

ment dates were fixed by the referee in making the award and not as the necessary result of inflexible provisions of the Act.

The appellants contend there is no statutory authority for the Industrial Commission to make payments of permanent partial disability due retroactively and cite Soars v. Soars-Lovelace, Inc., 346 Mo. 710, loc. cit. 719, 142 S.W.2d 866, 871, which holds that the Industrial Commission has only the authority conferred on it by statute. However, that question is not before us other than as it relates to liability for interest under the facts of this case, and our decision is strictly limited to the question presented.

■■■ The words "when due," as used in § 287.160, are similar in principle to "on all money due upon any judgment or order of any court from the day of rendering the same," as used in the general statute, § 408.040. Yet, we have seen that interest is not invariably paid from the date of judgment, as witness the situation just discussed where the judgment creditor by his appeal prevents satisfaction of the judgment. See also the words "due and payable" in § 408.020 relating generally to money owed on contracts and accounts. It has been said the "word 'due' in the statute means the 'time for payment.'" Kennard v. Wiggins, 353 Mo. 681, 183 S.W.2d 870, 872 [4]. See also Boyle v. Crimm, 363 Mo. 731, 253 S.W.2d 149, 157 [13], and Swanson v. Spencer, 177 Mo.App. 124, 163 S.W. 285, 286 [2]. The underlying purpose of these statutes are the same; that is, to furnish an incentive for prompt payment of monetary obligations and to compensate the creditor for the debtor's failure to do so.

15 Am.Jur. 579, Damages § 161, states: "It may be stated as a general rule, that interest is not allowed on unliquidated damages or demands, for the reason that the person liable does not know what sum he owes and, therefore, can be in no default for not paying. The damages in such cases are generally of an uncertain quantity, depending upon no fixed standard and

can never be made certain except by accord, verdict, or decree."

■ The amount of the permanent partial disability compensation was not adjudicated until the award was made on February 17, 1954. This alone, however, does not determine whether interest is allowable. "Although a claim may in a sense be unliquidated, interest thereon will generally be allowed where the amount due can be readily ascertained by mere computation, or by a legal or recognized standard." 47 C.J.S. Interest § 19 b, p. 31. See also 25 C.J.S. Damages § 52 b, p. 539. These authorities were cited in support of the holding with respect to the allowance of interest in May Department Stores Co. v. Union Electric Light & Power Co., 341 Mo. 299, 107 S.W.2d 41, 59 [27]. If standards are reasonably available to the debtor, he is under a legal duty to liquidate the sum due. Laughlin v. Boatmen's Nat. Bank of St. Louis, 354 Mo. 467, 189 S.W.2d 974, 979 [17].

Obviously the amount of compensation involved here could not be ascertained by mere computation. Nor do we think that the employer and insurer could reasonably be expected to make such determination by applying any known standards in view of the nature of the injury and the compensation claimed.

■ The Workmen's Compensation Act is not so complete as to provide guides or standards by which all compensation can be ascertained without a determination by the Commission. Section 287.190 deals with compensation for various injuries resulting in permanent partial disability. First, the section contains a schedule of injuries for which specific awards of compensation are provided. These generally cover the loss of use of a bodily extremity by severance or otherwise. These scheduled injuries are followed by provisions for "other injuries" which "shall include permanent injuries causing a loss of earning power." With respect to these other injuries, it is provided that "the compensa-

tion shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified." This provision for other injuries has been referred to as a catchall and, in the very nature of things, the determination of whether such an injury exists and its extent involves an exercise of discretion by the Industrial Commission. Robinson v. Beatrice Foods Co., Mo.App., 260 S.W.2d 346, 348 [3]; Russell v. Kansas City Public Service Company, Mo.App., 276 S.W.2d 644, 648; 99 C.J.S. Workmen's Compensation § 307, p. 1110.

■ If it appears that the injury has caused a partial loss of bodily function, which impairs the efficiency of the employee in the ordinary pursuits of life, recovery may be had under § 287.190 for permanent partial disability, notwithstanding the fact that the employee injured has suffered no loss of time from work and no immediate loss of earning power. Gordon v. Chevrolet-Shell Division of Gen. M. Corp., Mo.App., 269 S.W.2d 163, 170 [2]. Respondent employee's case necessarily falls within the "other injury" provisions of § 287.190. During the time he was being treated, probably no one knew if his recovery would be complete or if he would be partially disabled. Even when he attained his maximum recovery, the employer could not reasonably be expected to determine the fact and extent of its liability because the Act provides no standards by which the employer could make this determination and pay the compensation prior to its award by the Commission.

■ Whether interest is allowable on installments of this kind made payable retroactively has not been directly ruled in this state. Decisions from other states are persuasive. In the Minnesota case of Lappinen v. Union Ore Co., 224 Minn. 395, 29 N.W.2d 8, 20, the employee's claim for further compensation for permanent partial disability was commenced about eleven years after the date of award of temporary total disability resulting from the same in-

jury. One of the questions involved was whether interest should be allowed. The Court held there was no liability for interest prior to the time of the ascertainment of the amount of the liability, stating: "The employer here was not in default, because through inaction of the employe during the more than 11 years in question the employer's liability, including the amount and extent thereof, had not been established and *could not have been ascertained by a computation according to any known standards.*" (Emphasis added.)

Further, in discussing the means of estimating the percentage of disability sustained by the employee, the Supreme Court of Minnesota stated: "This can be, and as a matter of practice is, done by taking evidence and considering it in substantially the same manner as is done in a personal injury case in awarding damages for physical disability sustained as a consequence of defendant's wrong. Interest is never awarded on such unliquidated liabilities. Grand Forks [Lumber] Co. v. McClure Logging Co., 103 Minn. 471, 115 N.W. 406; Swanson v. Andrus, 83 Minn. 505, 86 N.W. 465. In the Swanson case we said (83 Minn. 510, 86 N.W. 467): ' * * * On the other hand, interest has not been allowed where the damages claimed were not only unliquidated, but could not be ascertained by reference to any generally recognized standard, or were, any part of them, prospective or contingent, or the amount thereof depended in whole or in part upon the discretion of the jury.' For the same reasons, no interest should be allowed here."

In Bushing v. Iowa Ry. & Light Co., 208 Iowa 1010, 226 N.W. 719, 721 [1], the Court held the employer should not be charged with interest on deferred payments of compensation for the death of an employee where "the delay of about ten years in bringing the claim before the Iowa Industrial Commissioner was due to the failure of the claimant to perfect her petition for review of the decision of the arbitration committee, * * *." See also Angelo v. Keystone State Const. Co., 134 Pa.Super. 255, 3 A.2d 946, 949 [6].

Dr. Pepper Bottling Co. v. Industrial Commission, 134 Colo. 238, 301 P.2d 710, 712, is not an interest case, but involves a construction of the term "due and payable" when applied to payments of compensation for a permanent partial disability. The employee was injured November 3, 1947, and payments for temporary total disability were made. On July 14, 1953, the Industrial Commission reviewed the case and found the employee had suffered a ten per cent permanent partial disability as the result of this injury. It included in its order the payments of temporary total disability at a weekly rate to May 20, 1948, which had been paid, and further ordered weekly payments at the same rate for and on account of permanent partial disability in an amount which extended these latter payments to April 5, 1952. This latter sum, payable by the order of July 14, 1953, was paid in full on August 10, 1953. On May 26, 1954, the employee again petitioned the Commission to reopen the case, which was done, and an order was made for the payment of additional compensation. The respondents contended the Commission lacked jurisdiction to reopen the case and make this additional order because the Colorado statute limited the Commission's right to reopen and review an award to " * * * any time within two years after *the date the last payment becomes due and payable* or within six years from the date of accident, whichever is longer, * * *." (Emphasis supplied.) C.R.S. '53, 81-14-19. The Supreme Court of Colorado stated the question to be determined and its answer as follows: "First: *Under the foregoing facts, did the two year statute of limitations begin to run April 5, 1952 (the date on which the last payment for permanent disability would have been made if there had been continuous monthly payments during the period of time covered by the final award); or did said statute begin to run July 14, 1953, which was the date on which the commission ordered, retroactively, the*

*payment of $17.50 for every week beginning in May 1948 until $3,531.71 had been paid?*

"The answer is, that the statute did not begin to run until the award was in fact made by the Industrial Commission, which in the instant case was July 14, 1953." Further, the Court stated: "Certainly under these circumstances, in the absence of an adjudication on any issue of permanent disability, it cannot be said that compensation was due and payable in any amount." 301 P.2d 712.

■ Under the facts of the instant case, the compensation for permanent partial disability cannot be said to be due within the meaning of § 287.160 prior to the entry of the award on February 17, 1954. We need not extend the opinion by a discussion of the cases of Howes v. Stark Bros. Nurseries and Orchards Co., 223 Mo.App. 793, 22 S.W.2d 839, Floyd v. A. Y. McDonald Mfg. Co., 226 Mo.App. 444, 46 S.W.2d 251, and Walker v. Pickwick Hotel, Mo.App., 211 S.W.2d 55, cited and relied upon by the respondent employee. It is sufficient to say that any ruling in those cases inconsistent with this opinion should no longer be followed.

The final question is whether the employee is entitled to interest after the judgment was affirmed by the St. Louis Court of Appeals on February 21, 1956. The facts on this issue are set out in considerable detail in that Court's opinion. Mo. App., 305 S.W.2d 508–509. In brief, there were negotiations in March, 1954, between the attorneys for the parties with respect to the payment of the sum of $2,133.33. The insurer was willing to pay this amount, but the employee did not want the payment to prejudice the appeal he had taken. The first check was returned to the insurer because it had on it the words: "Settlement as per award." Another check, dated March 29, 1954, was sent to the employee's attorney. The word "settlement" had been removed, but the check had on its face the words, "As per award." The delivery of

the check was not accompanied by a letter requested by employee's attorney, stating "* * * that the payment is not to be construed as a settlement of the claim or an acceptance of the award as is, * * *." With the check, "final receipts" in the form required for filing with the Industrial Commission were sent and when these were not signed and returned by the employee, the insurer's attorney again sent forms and requested final receipts. They were not executed. The employee's attorney retained the check, but did not cash it. It was still in his possession at the time of the hearing on the motion to quash. The insurer proved that a reserve had been maintained for the payment of the check. The appellants contend that the retention of the insurer's check was tantamount to payment thereby stopping the running of interest. With this we cannot agree.

■ "The law is well settled that the payee's mere acceptance of his debtor's check will not constitute payment of the debt in the absence of an express agreement to that effect, and that without such agreement or consent, which may be shown from the circumstances and conduct of the parties, the debt is not discharged until the check is in fact paid in due course." Rettinghouse v. Krey Packing Co., Mo. App., 200 S.W.2d 584, 586. In addition to the supporting authorities cited in the Rettinghouse case, see G. F. C. Corporation v. Nesser, Mo., 273 S.W.2d 264, 267; Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631, 638; and Credit Equipment Corporation v. Weston, Mo.App., 315 S.W.2d 493, 496. The evidence fell short of proving an agreement express or implied to accept the check in payment, and its mere retention did not have the effect of stopping the running of interest. The trial court did not err in refusing to quash the execution to the extent that it provided for interest after the judgment was affirmed by the St. Louis Court of Appeals.

The order of the trial court overruling the motion to quash the execution and the garnishment in aid thereof is affirmed with

respect to the amount of the award and judgment and interest accruing thereon subsequent to February 21, 1956, the date of the affirmance of the judgment by the St. Louis Court of Appeals, and the order is reversed with respect to the interest claimed prior thereto, and the cause is remanded with directions to enter an order quashing the execution to the extent of the amount of interest so disallowed and amending the execution and garnishment accordingly.

All concur.