**Clifton E. JOHNSON, Plaintiff–Appellant,**

**v.**

**ST. JOHN'S MERCY MEDICAL CENTER, Defendant–Respondent.**

**No. 58403.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1991.

Application to Transfer Denied Sept. 10, 1991.

Ray A. Gerritzen, St. Louis, for plaintiff-appellant.

Daniel Steigerwald, St. Louis, for defendant-respondent.

SATZ, Judge.

This is a worker's compensation case. Claimant, Mr. Clifton E. Johnson (employee), successfully processed a claim against his employer, St. John's Mercy Medical Center (employer), and the Second Injury Fund. After recovering from them, the employee sought to have the Labor and Industrial Relations Commission (Commission) reopen and review his award on the grounds of a change in his condition. The Commission determined it lacked jurisdiction "following expiration of the time during which the award is to be paid or payment of the award." The employee appeals. We affirm.

The material facts are not in dispute. The employee injured his back while at work on August 19, 1983. He injured his back a second time on January 12, 1984, when he fell during a treatment for the first injury. He filed claims for these two injuries on September 30, 1983, and on January 23, 1984, respectively. He filed amended claims for compensation for both injuries on May 6, 1986.

There was a hearing before an administrative law judge (ALJ) on December 7, 1987. On January 12, 1988, the ALJ awarded the employee $2,257 for medical expenses; $132 per week for 45 and four-sevenths weeks for temporary total disability; $121.25 per week for 120 weeks for permanent partial disability; and $4,850 from the Second Injury Fund, for a total

award of $27,672.43. Both the employee and the employer filed applications for review of the ALJ's award with the Commission.

The Commission's final award, dated April 10, 1989, modified the ALJ's award by reducing the number of weeks of temporary total disability to 25 and four-sevenths and by allowing an additional $2,790 for medical treatment. It otherwise affirmed that award.

The employer's insurance company paid the employee $19,606.13 by check on April 20, 1989. The employer paid $5,047, the amount due for medical expenses, by check on May 3, 1989.

On October 12, 1989, the employee applied to the Commission for a rehearing due to a change in condition under § 287.470, RSMo. (1989 Supp.).[1] On May 2, 1990, the Commission denied the application on the grounds it lacked jurisdiction over the claim "following expiration of the time during which the award is to be paid or payment of the award." The employee appeals from this order.

On appeal, the employee makes three basic arguments why the Commission had jurisdiction to hear his application for his alleged change of condition. First, he argues that the plain meaning of § 287.470 grants the Commission the jurisdiction to review awards "at any time", without limitation. Second, he argues that his application for review was filed within 120 weeks of the date his award was made and, thus, was filed during the time the permanent partial disability award was to be paid. This, he reasons, meets the jurisdictional requirements of § 287.470. Third, he argues that his award has not been fully paid because the employer has not paid all the interest due on the award. Since the award was unpaid, he argues, it was still pending before the Commission and, therefore, the Commission had jurisdiction to hear his application to change the award. None of these arguments is persuasive.

I.

The employee first argues the plain language of § 287.470 permits the Commission to review an award "at any time." He urges us to re-examine some 60 years of case law which limits the Commission's power to review an award to those awards still pending before the Commission. *See, e.g. Yokel v. Beta Corp.*, 615 S.W.2d 78 (Mo.App.1981).

The pertinent statutory language in issue states:

> Upon its own motion or upon the application of any party ... the commission may at any time upon a rehearing after due notice ... review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded,....
>
> § 287.470

The employee makes a detailed analysis of this language to show that its plain meaning authorizes the Commission "at any time ... [to] review any award." § 287.470.

We need not detail the employee's analysis here. Suffice it to say it has been previously urged upon this Court and others, and, consistently, has been rejected. *E.g., Holman v. Normandy Osteopathic Hospital*, 691 S.W.2d 360, 361 (Mo.App. 1985); *Yokel, supra* at 80; *Winn v. Kroger Co.*, 615 S.W.2d 80, 81 (Mo.App.1981); *Miller v. William C. Johnson & Sons Machinery Co.*, 83 S.W.2d 144, 146 (Mo.App. 1935).

The holdings of these cases stem from *State ex rel Saunders v. Missouri Workmen's Compensation Commission*, 333 Mo. 691, 63 S.W.2d 67 (1933). In *Saunders*, the Supreme Court said the quoted statutory language "contemplates awards of continuing payments of fixed amounts on issues pending before the commission. They may be ended, or the amounts may be either increased or diminished, at any time during the period or periods fixed for the payments. It is a matter pending with the commission during said time." *Saunders, supra* at 69. The Court then held a settle-

1. All statutory references are to RSMo 1986, unless otherwise noted.

ment was not an "award" within its interpretation. *Id.*

This interpretation, although dicta, was applied by this Court in *Miller, supra,* when it held "the application [for review under this section] must be filed during the continuation of the payments, or, in the case of a lump-sum settlement, during the adjudicated period of disability, else the commission, as a body of limited jurisdiction, will be without the power and jurisdiction to entertain it." *Id.* at 146. Moreover, this Court has also said, after periodic payments under an award have ended, there is nothing to end, increase or diminish and, thus, the Commission has no pending award to which jurisdiction may be said to attach. *Yokel, supra* at 80. Clearly, then, under our courts' reading of § 287.470, the Commission cannot act upon an award after the period set for payment has expired and the award has been paid.

The employee argues that this interpretation of § 287.470 "subverts" the intent of the legislature. We disagree. If the legislature is dissatisfied with this interpretation, it has had over 50 years to express itself and has not done so. Bills to change the law as the employee suggests have been introduced but not enacted. *Yokel, supra* at 80.

■ Next, the employee argues the word "review" does not imply the "award" to be reviewed must remain open in order to be reviewed; therefore, he contends, "review" as used in the statute compels the inference that there are no jurisdictional limits on the Commission's authority to review an award. We disagree.

In logic and law, the meaning given to words and phrases depends upon the context in which they are used. *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441, 445 (Mo. banc 1980). Although the use of the word "review" by itself may not necessarily imply jurisdictional limits to what can be reviewed, it does not follow that its use in context necessarily precludes that implication. Quite simply, our courts have drawn a reasonable inference from the use of the word "review" in its statutory context.

■ The employee also argues that the lack of a time limit in § 287.500 also shows the legislature did not intend there be a limitation upon the Commission's power to review awards. Section 287.500 provides that a party may file a certified copy of an order or decision of the Commission with a circuit court, which shall then enter an appropriate judgment. It also provides that whenever the underlying order is modified on the ground of a change in condition under § 287.470, the judgment shall also be so modified.

The employee argues that it takes a considerable length of time to reduce an award to judgment, presumably longer than the period set for payment of the award. Thus, he argues, in drafting § 287.500, the legislature must have contemplated a modification of the judgment after the period set for payment of the award had expired. Therefore, he reasons, the legislature did not intend there to be a time limit upon the Commission's power to review under § 287.470.

We do not read this intent in the statute. There is no evidence to support the employee's implicit contention that an award cannot be reduced to a judgment within the period set for payment of the award. However, even if we accept the argument that a compensation proceeding can last for years, it does not necessarily follow that awards can never be reduced to judgment within the payment period. Thus, § 287.500 does not necessarily contemplate the Commission's review power to be unlimited in time, and our courts' interpretation of § 287.470 is, therefore, not inconsistent with § 287.500.

Moreover, § 287.500 provides for modifying the judgment to conform to "any decision of the commission ending, diminishing or increasing any *weekly payment....*" (emphasis added). By definition, awards which are being paid in weekly payments are still within the period set for payment and, therefore, are still within the Commission's jurisdiction. Likewise, for a judgment to remain open to modification, it must be at least partly unpaid. *See City of*

*St. Louis v. Senter Commission Co.,* 343 Mo. 1075, 124 S.W.2d 1180, 1184 (1938). Under our courts' interpretation of § 287.-470, the Commission retains jurisdiction over any unpaid award. Thus, since § 287.500 concerns modifications made to unpaid awards, it contemplates *only* modifications made during the time the Commission retains jurisdiction. Therefore, our courts' interpretation of § 287.470, again, is not inconsistent with the provisions of § 287.500.

The employee also argues that the Commission's docket is so clogged that, as a practical matter, awards are never made before the payment period expires. Thus, the only awards which can ever be reviewed are total permanent disability awards, because they never expire.

The employee does not convince us this is so unfair to injured employees that it compels us to relax our jurisdictional limit on review. Section 287.470 is not meant to provide an additional avenue for appeal. *See, Brammer v. Binkley Min. Co. of Mo.,* 244 S.W.2d 584, 589 (Mo.App.1952). It is meant to insure that the award, as finally made, reflects the employee's injuries as accurately as can be determined within the period set for review. As long as the employee has the opportunity to present evidence of the full extent of his injury during this period, the purpose of this section is fulfilled and the employee suffers no injustice. This is true whether he presents his evidence in a hearing on review under this section, or in a proceeding seeking the initial award.

II.

The employee next argues that even under the cases limiting the Commission's jurisdiction, he had 120 weeks from the date of the final award in which to apply for review on the grounds of a change in condition. He makes this conclusory statement without any reasoning or specific citations to cases. "Ordinarily, a point of error unsupported by citation of relevant authority is deemed abandoned." *Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo. App.1981). However, we choose to address this issue, even though the employee does not urge this issue as a matter of first impression, as justification for lack of cited authority. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978). The issue does appear to be one of first impression, and it is facially attractive.

We read the holdings of our cases differently than the employee does. They hold that the Commission loses jurisdiction when an award is fully paid. *See, e.g., Yokel, supra* at 79; *Holman v. Normandy Osteopathic Hospital,* 691 S.W.2d at 361 (Mo.App.1985); *Miller v. William C. Johnson & Sons Machinery Co.,* 83 S.W.2d at 146 (Mo.App.1935). The reason advanced is that once payments on an award have ended, there is nothing left to "end, diminish or increase," and thus nothing to which the Commission's jurisdiction can attach. *Yokel, supra.*

Our courts have also held that where periodic disability payments which are not yet due are commuted to a lump sum under § 287.500, the Commission retains jurisdiction to review the award until the payments would have otherwise ended, unless the employee expressly waives his right to review. *Bruce v. Missouri–Kansas–Texas R. Co.,* 229 Mo.App. 124, 73 S.W.2d 425 (1934); *Oard v. Hope Engineering Co.,* 228 Mo.App. 237, 64 S.W.2d 707, 709–10 (1933). The reason is that the commutation alone is not a settlement of all rights or claims which the injured employee might have, specifically not the right to apply for a review for a change in condition. *Oard* at 709–710.

The holdings of these cases do not necessarily preclude the employee's contention that in this case the Commission retains jurisdiction for 120 weeks from the date of the final award even though the award was paid. However, for the employee's contention to be consistent with these holdings, the Commission would retain jurisdiction only if the payments here were due over a period of time following the date the award was made. *E.g., Yokel, supra; Oard, supra.* But, this would be inconsistent with both the teachings of the cited cases and

other relevant and the statutory scheme of our Worker's Compensation Act.

Our courts have said the Commission loses jurisdiction when the award had been paid and the period set for payment had expired. In most of these cases, when the court clearly stated the date on which the period set for payment began, that date was the day or the day after the injury occurred. *See, e.g., Yokel, supra,* 615 S.W.2d at 79; *Bruce, supra,* 73 S.W.2d at 427; *Holman, supra,* 691 S.W.2d at 361; *Miller, supra,* 83 S.W.2d at 145. *But see Blissenbach v. Gen. Motors Assembly Div.,* 776 S.W.2d 889, 891 (Mo.App.1989). In no case did the court expressly state or imply the period began on the date of the award.

Moreover, in *Martin v. Mid-America Farm Lines, Inc.,* 769 S.W.2d 105, 112 (Mo. banc 1989), the Court's reasoning clearly implied the date for periodic payment begins prior to the date of the award. In *Martin,* the Court interpreted § 287.160 to determine how interest is computed on a compensation installment. That statute governs when and how compensation was to be paid and it was in effect at the time of the employee's injury here. It read in pertinent part:

> 2. Compensation shall be payable as the wages were paid prior to the injury, but in any event at least once every two weeks. Each installment shall bear interest at the rate of eight percent per annum from the date when due until paid....

To the Martin Court, this language meant that each installment should bear interest from the time when it should have been paid, not from the date of the award, regardless of whether the amount was disputed, or else the employee would not be made whole. *Martin, supra,* at 112. The Court did not clearly state when an installment "should be paid." However, implicit in its decision is that the date it "should be paid" is not the date of the award, but sometime before that.

Furthermore, the statutory scheme contemplates that compensation payments are to be paid during a period of time coincident with the period during which the employee is disabled by his injury. Payments for temporary total disability, for instance, are to be made "during the continuance of such disability ..." § 287.170. Likewise, temporary partial disability "shall be paid during such disability ..." § 287.180. The word "disability" as used in the Act means an impairment in the injured employee's ability to earn wages. *See* § 287.020.7; § 287.180. And, compensation is awarded not for a physical injury or incapacity alone but for an incapacity coupled with a reduction in the ability to earn wages. *Larson,* 2 *Workmen's Compensation* § 57.11 (1989). Thus, the Act directs that disability compensation is to be paid during the time the employee's ability to earn is affected by the injury. This is the period set for payment, and that period is the period during which the Commission retains jurisdiction over the award. *E.g., Yokel, supra.*

Here, no different than other cases, the date the underlying disability began determines when periodic payments were due under the award. The ALJ made a finding that the employee left work immediately after his injury and never returned. Thus, the impairment in the employee's ability to earn wages began immediately. Since the Act directs that compensation is payable during the disability, §§ 287.170, 287.180, the employee became entitled to receive disability compensation beginning at that time and continuing for the number of weeks awarded. The Commission retained jurisdiction during that period, or, since the award was not paid during that time, until the award was fully paid. *Yokel, supra.*

We do not say nor intend to say that an employee cannot become disabled at some time other than the time of the injury, if the evidence supports such a finding. But, in the absence of such a finding, and particularly where, as here, the evidence shows the disability began on the date of the injury, we will consider that the period set for payment of the award began that day.

From the record before us, the period of disability during which this award was to be paid began on August 18, 1983, the day of the injury, or at best for the employee,

the day after. This period ran for no more than 192 weeks from that date, or until approximately April 28, 1987. Since the Commission retains jurisdiction over an award until the end of the period set for its payment, or until it is fully paid, whichever is later, *e.g., Holman v. Normandy Osteopathic Hospital,* 691 S.W.2d at 361, the Commission's jurisdiction to review this award expired when it was paid in full on May 3, 1989. Thus, the Commission did not err when it denied the employee's application for lack of jurisdiction.

III.

As we understand the employee's final argument, he argues that interest remains due on his award; therefore, the award has not been fully paid; the Commission retains jurisdiction until his award is fully paid; and it, thus, had jurisdiction to hear his application for review. We disagree.

In its final award, the Commission ordered that any past due compensation was to bear interest "from the date due until paid as provided by Section 287.160 RSMo 1986." The award was issued on April 10, 1989, and, on April 20, 1989, the parties agree, the employee received a check for $19,606.13 from the employer's insurer. This amount includes interest figured from January 12, 1988, the date of the ALJ's original award. The employee argues, however, that he is due interest from the date each individual installment of compensation was due, relying on *Martin v. Mid-America Farm Lines, Inc.,* 769 S.W.2d 105, 112 (Mo. banc 1989).

In *Martin,* the Court interpreted § 287.160.2 to mean that each installment of compensation bears interest at the statutory rate from the date it should have been paid, not from the date of the award, regardless of any dispute. *Id.* But, *Martin* was handed down on April 18, 1989, some eight days after the date of the final award. Thus, the employee would benefit from *Martin* only if *Martin's* holding has retrospective effect here. It does not.[2]

The employee did not "receive final payment" until April 20, 1989, some two days after *Martin* was handed down. Thus, arguably, his case before the Commission was still pending at that time. But, even if this status of his case gave the employee standing to request *Martin* be applied retroactively, as he does, he still would not prevail.

Our Supreme Court has recognized "the general rule of retroactive effect of changes wrought by its decisions." *Sumners v. Sumners,* 701 S.W.2d 720, 723 (Mo. banc 1985). But, the Court has also recognized "its authority to declare whether such decisions are retroactive or prospective." *Id.* Although the Court in *Martin* made no such express declarations, it has provided guidelines to make the determination whether its decisions should be applied retroactively or prospectively. *Sumners, supra* at 724.

The Court makes two exceptions to the general rule of retroactivity. The first pertains to procedural as opposed to substantive law, and the second "turns on the issue of fundamental fairness." *Id.*

Procedural changes are given prospective effect only. *E.g., Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377–78 (1937). Thus, under the first exception, the employee certainly would not prevail if the changes made by *Martin* were procedural rather than substantive. But we need not and do not make that determination here. The second exception, fundamental fairness, precludes the application of *Martin* retroactively here.

The Court has adopted a three-factor test to resolve the issue of fairness when determining whether its "overruling decisions" should be applied prospectively only, and our intermediate courts of appeal have used that same test where the Court's decision established new law without overruling past decisions. *Elliot v. Kesler,* 799

2. The record before us does not show the employee ever attempted to obtain additional interest by invoking the rule established in *Martin.* Thus, it is questionable, at best, whether he can now invoke that principle indirectly and collaterally to re-open his case before the Commission for an entirely different purpose.

S.W.2d 97, 102 (Mo.App.1990); *see, e.g., Spotts v. City of Kansas City,* 728 S.W.2d 242, 248–250 (Mo.App.1987). The test, based upon the test of retroactivity announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is a balancing test to determine whether the decision should be applied prospectively only. The court must determine:

"1. Does the decision establish a new principle of law;

2. Will the purpose and effect of the new rule be enhanced or retarded by retroactive application;

3. What hardship will result to parties who relied upon the old rule if the new rule is applied retroactively?"

*Spotts, supra* at 248–249; *Sumners, supra* at 724.

There is no question *Martin* established a new principle of law. Prior to *Martin,* the Court, in *Komosa v. Monsanto Chemical Co.,* 317 S.W.2d 396 (Mo. banc 1958), appeared to hold that when the amount of compensation due is disputed, the time when a payment is "due" for purposes of determining interest is no earlier than the date of the award. *Martin* is clearly contrary and, thus, it establishes a new principle of law, either by overruling *Komosa* or by deciding an issue of first impression whose resolution was not clearly foreshadowed by prior law.[3]

Second, the rule in *Martin* would not be enhanced by is retroactive application here. Arguably, *Martin* would entitle the employee to more interest than he received. But, he is not seeking more interest here, nor does the record show he ever attempted to invoke *Martin* to seek additional interest. He simply is attempting to use *Martin* indirectly and collaterally to reopen his case before the Commission, not for more interest but for different disability payments.

Third, to apply *Martin* retroactively would have the effect of reopening settled compensation cases in which interest was determined under the rule in *Komosa.* This unsettling of resolved claims and resulting strain on the Worker's Compensation system to increase an unknown amount of interest payments has not been justified to us.

Moreover, the legislature in 1990 amended § 287.160 to declare that, in cases where the amount of compensation due is disputed, past due amounts shall bear interest from no earlier than the date of the administrative law judge's award. H.C.S.S.S.S.C.S.S.B. 751 (Mo.Laws 1990) codified as amended at § 287.160.3 RSMo (1990 Cum.Supp.) The legislature thus abrogated that part of *Martin* regarding interest and codified an approach very similar to that of *Komosa.* We are, naturally, reluctant to give retrospective effect to a decision which the legislature has since abrogated. *E.g., Spotts, supra,* 728 S.W.2d at 249–50 (Mo.App.1987).

Judgment affirmed.

SMITH, P.J., and CARL R. GAERTNER, J., concur.

3. It is not clear whether *Martin* overruled *Komosa.* In a footnote, the Court in *Martin* distinguished *Komosa* on its facts, but the Court also stated that "[t]o the extent that *Komosa* is inconsistent with this holding, it should no longer be followed." *Martin, supra,* 769 S.W.2d at 112, Fn. 13.