**CITIZENS DISCOUNT AND INVESTMENT CORPORATION, a Corporation, Plaintiff-Appellant,**

v.

**George WOOD, Defendant-Respondent.**

**No. 33131.**

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Carstarphen, Harvey & Wasinger, Hannibal, for plaintiff-appellant.

Fred Wilkins, Edward A. Glenn, Louisianna, for defendant-respondent.

DOERNER, Commissioner.

In this court-tried action for the replevin of an automobile the court sustained defendant's oral motion for judgment at the close of plaintiff's evidence and after an unavailing motion for a new trial plaintiff brought this appeal.

The car involved, a 1965 Chevrolet four door sedan, was titled by the State of Nebraska by the issuance of a certificate of title to John Wilkinson Auto Sales, of Lincoln, Nebraska, on January 12, 1966. Wilkinson assigned the certificate to Pillon Auto Sales, Inc., of Lincoln, on April 14, 1966, by executing the assignment form on the back of the certificate. On the same day, by completing and executing an additional form on the Nebraska certificate, Pillon re-assigned it to Ellis Auto and Metal Works, the name under which one Ellis Feith, an automobile dealer, engaged in business at Bowling Green, Missouri. Plaintiff, a finance company, made a series of loans to Ellis to finance Ellis' inventory of automobiles offered for sale to the public. To protect its interests plaintiff had required Ellis to execute a financing statement on such automobiles, pursuant to § 400.9–302, Laws 1963, p. 622, V.A.M.S., and had filed copies thereof with the Secretary of State and the Recorder of Deeds of

Pike County on January 23, 1966. And as security for the loan on the automobile here involved Ellis executed a promissory note payable to plaintiff in the amount of $1750, dated May 25, 1966, due August 25, 1966, with interest from date at 7%, and an instrument titled "chattel mortgage," which was not filed for record.

Plaintiff has devoted a considerable portion of its brief in support of the proposition that it complied with all pertinent statutory requirements necessary to establish the validity of its lien on the automobile in question. In a commendable effort to narrow the controverted issues defendant states in its brief: " * * * Respondent concedes that plaintiff had a duly perfected socurity (sic) interest in the subject matter of this suit in the form of inventory in Feith's showroom. Respondent further concedes that upon the sale of the car to defendant, plaintiff had a valid security interest in the proceeds of that sale in the hands of Feith, including the car that defendant traded in the transaction. The sole question before this court is whether plaintiff sustained the burden of proving that plaintiff's security interest followed the car in to the hands of the defendant." With that concession in mind we turn to a review of the pertinent evidence.

As its first witness plaintiff called the defendant to the stand. Defendant identified his signatures on plaintiff's exhibits (P–1(B) and P–1(C), and upon request produced and identified his certificate of title to the car involved, (marked plaintiff's exhibit 2) to all of which exhibits we will presently refer. Counsel for plaintiff propounded the question, and received defendant's answer, as follows:

> "Q. Now, you may not remember the exact date but do you remember about the time that you acquired or, rather, you took possession of this motor vehicle that you hold your certificate of title to, which is marked plaintiff's exhibit number 2?

"A. June 4, 1966."

Plaintiff also introduced in evidence the following exhibits, which in their chronological order are as follows:

(1) *Exhibit P–6* The chattel mortgage on the car, executed on May 25, 1966, by Ellis E. Feith, doing business as Ellis Auto and Metal Works. The following provisions in what is obviously plaintiff's printed form are particularly pertinent:

> "Mortgagor agrees to keep said chattels in his sales room at _____ Street, Bowling Green, Missouri, and shall be entitled to exhibit the same for sale and to sell each of them in the regular course of trade for the account of Mortgagee for cash for not less than the pro-rated portion of the note with respect to such chattel and accrued interest thereon, and shall hold the proceeds of any sale as Trustee for Mortgagee separate and apart from his own funds and shall account to the Mortgagee for the same and make immediate remittance to Mortgagee. * * *

> * * * * * *
> "Mortgagor agrees not to sell said chattels except as herein provided, or to do any act with respect to said chattels except to keep and sell the same as herein provided. Mortgagor shall not, in endeavoring to sell any chattel, or at any other time, use or demonstrate the same or remove the same from said sales room without the written consent of Mortgagee previously obtained."

On the reverse side of the chattel mortgage there is printed a form titled "Wholesale Discount & Payment Record." This record indicates that no payments were made on the loan and that the full amount of $1750, together with interest thereon, remained due and payable until February 18, 1967, when a charge back credit of $40.50 was entered on the record.

(2) *Exhibit P-7(C)* Application of Ellis Auto and Metal Works for a Missouri certificate of title, on the official form, dated June 14, 1966, in which the motor vehicle is misdescribed as a 1966 Chevrolet. No lien is shown in the box for that purpose on the form.

(3) *Exhibit P-7(D)* Application of Ellis Auto and Metal Works for a Missouri certificate of title, on the official form, dated November 3, 1966, in which the subject car is described as a 1965 Chevrolet. In the appropriate box bearing the printed words "First Lien" there is hand printed the name "George Wood." The form is stamped with the word "Corrected."

(4) *Exhibit P-1(B)* Missouri certificate of title on the automobile involved issued to Ellis Auto and Metal Works, dated November 9, 1966. The certificate, in part, obviously incorporates by photostat plaintiff's exhibit P-7(D), the application of November 3, 1966, and thus includes the references to the first lien and the word "Corrected." On the face of the certificate there is printed "The undersigned, holder of the lien described on the certificate of title hereby releases said lien" followed by the signature and date: "George Wood 11–19–66." On the back of the exhibit the assignment of title form is completed, and acknowledged by Ellis Feith before a notary, whereby Ellis Auto and Metal Works assigned the certificate of title to George Wood on November 19, 1966.

(5) *Exhibit P-1(C)* Application of George Wood for a Missouri certificate of title for the car, made on the official form, dated December 7, 1966 on which there appears the following:

| (Printed on form) | (Typewritten or handwritten) |
|---|---|
| "Full Price | $2495.00 |
| Trade-In Allow | $ 595.00 |
| Net Price | $1900.00 |
| Tax Am't. Ser. (?)  Inst. | $  57.00 |
| Date of Purchase | 11–19–66" |

When defendant identified his signature on this exhibit he stated: "Yes, sir; that is on my old car that I traded in."

(6) *Exhibit P-2* Missouri certificate of title issued to George Wood on the subject vehicle, dated December 27, 1966. In part, it consists of a photostat of exhibit P-1(C) and thus shows the information stated on the latter.

For reasons not apparent to us but probably known to them neither counsel asked defendant, while he was on the stand, to relate the facts and circumstances surrounding his acquisition of the car and the nature and terms of transaction. Defendant's counsel, in fact, waived examination of his client and stated that he would recall him later, but that, of course, became unnecessary when the court sustained defendant's motion for judgment at the close of plaintiff's evidence. Thus plaintiff rested its case in the main on the exhibits it introduced in evidence and the inferences to be drawn therefrom. Not surprisingly, the parties differ sharply in their conclusions of what those exhibits indicate. In brief, plaintiff argues that they show that Ellis Auto mortgaged the car to defendant, and that defendant acquired it under his mortgage. For his part, defendant urges that his quoted testimony shows that he purchased the automobile on June 4, 1966, and that the exhibits reveal that he paid $2495 for it, consisting of a trade-in allowance of $595 for his old car and $1900 in cash.

There would seem to be some substance to plaintiff's contention that defendant held some sort of a lien on the vehicle. For not only is defendant described as a lienholder in plaintiff's exhibits P–7(D) and P–1(B), but on the latter he signed the release of the lien he held. It does not necessarily follow, however, as plaintiff argues, that defendant acquired title to the car by virtue of that lien. Plaintiff draws that conclusion solely from the fact that defendant executed the release of his lien on November 19, 1966, the same day on which Ellis Auto assigned its certificate of title to him. The weakness in that contention, however, is that the nature and amount of defendant's lien was not shown and for aught that appears in the record it may have been for a relatively insignificant amount. The evidence of defendant's release of the lien, standing alone, supports with equal validity an inference of discharge by payment as well as one that Ellis Auto transferred title by virtue of defendant's lien.

■ Furthermore, the effectiveness of plaintiff's contention is greatly weakened if not refuted by its own exhibits. We cannot agree with defendant's argument that his testimony shows he bought the car on June 4, 1966. What he said was that he took possession of it on that day. One may acquire possession of a motor vehicle by means other than that of purchase. And there could not have been a valid sale as of that date because the Nebraska certificate of title which Ellis Auto then held was not contemporarily assigned to defendant. § 301.210, RSMo 1959, V.A.M.S.; Pearson v. Allied Finance Co., Mo.App., 366 S.W.2d 6; Bordman Investment Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72; Lebcowitz v. Simms, Mo.App., 300 S.W.2d 827. But exhibits P–1(B), P–1(C) and P–1(D) which plaintiff introduced, and which are therefore binding on it, indicate that defendant *purchased* the car from Ellis Auto on November 19, 1966; that the total consideration was $2495; and that that sum consisted of a trade-in allowance of

$595 for defendant's old car, and cash of $1900, as may be inferred from the words "net price" on plaintiff's exhibit P–1(C).

Plaintiff does not deny that Ellis Auto had the right to sell the car on which it held a chattel mortgage. It could not very well do otherwise, for as will be noted in the quoted portion of that instrument Ellis Auto was expressly and unequivocally given the right to sell the vehicle for cash. In furtherance of its contention already considered, plaintiff argues that defendant obtained title by virtue of supposed mortgage, not by a sale for cash. As we have pointed out, plaintiff's own exhibits tend to effectively refute that argument. They also show that the amount defendant paid in cash, $1900, was in excess of the principal of $1750 due on the note together with the interest accrued thereon of approximately $62.

■ There is no merit to plaintiff's argument that the chattel mortgage prohibited Ellis Auto from delivering possession of the car to defendant without first obtaining the written consent of plaintiff. As we have noted, by unequivocal language Ellis Auto was expressly given the right to sell the automobile for cash, and a sale contemplates the delivery of the chattel sold. In the light of that plain and unrestricted provision the subsequent sentence upon which plaintiff relies, that " * * Mortgagor shall not, *in endeavoring to sell any chattel,* or at any other time, use or demonstrate the same or remove the same from said sales room without the written consent of Mortgagee previously obtained" (Emphasis added.) is uncertain and ambiguous. Being ambiguous, and having been drafted by plaintiff against whom it should therefore be construed, the most that can be said for it is that it limited Ellis Auto's right to remove the vehicle from its sales room for the purpose of demonstrating it while endeavoring to effect a sale. It did not prohibit Ellis Auto from delivering the car when it made the sale which it was clearly and plainly authorized

to make. If plaintiff's intention was to forbid the removal of the car from Ellis Auto's sales room for any purpose without its prior written consent that prohibition could have been expressed in plain and simple language.

■ Replevin being a possessory action it was incumbent upon plaintiff to plead and prove its right to the immediate possession of the automobile at the time it filed its suit and that defendant was then wrongfully detaining the same. Monarch Loan Co. v. Anderson Transmission Service, Mo.App., 361 S.W.2d 328; Wilks v. Stone, Mo.App., 339 S.W.2d 590; Cindrick v. Scott, 226 Mo.App. 153, 42 S.W.2d 957. Plaintiff failed to carry that burden, and the trial court properly entered judgment in favor of defendant.

Accordingly, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and ELGIN T. FULLER, Special Judge, concur.

WOLFE, J., not participating.