Lloyd OLSON, Plaintiff-Appellant,

v.

Donald PENROD, Defendant-Respondent.

No. 34649.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 6, 1973.
Motion for Rehearing or to Transfer to
Supreme Court Denied April 9, 1973.

John H. Mittendorf, Union, for plaintiff-appellant.

Thomas J. Briegel, John B. Berkemeyer, Union, for defendant-respondent.

PER CURIAM:

Plaintiff filed a petition in replevin alleging the ownership and seeking the return of a John Deere No. 1010 crawler of the value of $3,500.00, together with damages at the rate of $50.00 per day for the taking and detention of the same. Defendant in his answer alleged he was the owner and entitled to possession of the crawler. A jury was waived, the cause was tried to the court, and a judgment was entered in favor of defendant, from which the plaintiff appeals. We affirm.

Defendant purchased the crawler from Heisel Equipment Company in 1969 for

$4,563.36, by paying $1200.00 down and giving Heisel a security agreement for the balance of $3,363.36. After making monthly installment payments the amount owed by defendant on April 5, 1971, was $948.69. On that day William F. Aubuchon, Jr., who had borrowed the money from his father, William M. Aubuchon, Sr.,[1] entered into a written contract, which was recorded, whereby Aubuchon, Jr., bought the crawler from defendant for $4,000.00, by making a down payment of $948.69 to defendant (so that defendant could discharge the lien held by Heisel), and agreeing to pay the balance of $3,051.31 at the rate of $10.00 for every 1000 feet of lumber cut and sold by Aubuchon, Jr. Seventeen days later, on April 22, 1971, Aubuchon, Jr., executed, had notarized, and gave to his mother for delivery to his father the document which reads as follows, marked plaintiff's exhibit 2:

"April 22 1971

"To Whom It May Concern:
F.

"I William F. Aubuchon do hereby authorized, and appoint as my repersentative (sic) one William M Aubuchon, relation father, to act on my behalf, to make any decision which needes (sic) to be made during my absence which is for the future, and immediate finical (sic) well being, both for my business, as well as my family, and any other concerned legal parties.

"This authorization to pertain to any assests (sic) which exist at the time. (Tools & equipment).

"This decision should be his responsibility only upon my absence.

"Signed

/s/ William F. Aubuchon
"Witness:__       William F. Aubuchon
"Witness:__  /s/Notary Public 4–22–71
        /s/ R. H. Brown
      /s/  My com. Expires 10–4–72"

and Aubuchon, Jr., and we will do likewise.

1. Despite the dissimilarity of the middle initials the parties in their brief referred to the father and son as Aubuchon, Sr.,

According to Aubuchon, Jr., who was called as a witness by the defendant, he used the crawler on his father's farm, but subsequently he moved it to "the Kleekamp land." At that point in the testimony of the witnesses the times when the events subsequently referred to occurred are by no means as definite as they might have been, but we deduce as best we can from the record that after moving the crawler to the Kleekamp. property, Aubuchon, Jr., secured employment as a tractor-trailer driver from a man named Taylor and went to South Dakota. Precisely how long he was gone was not shown, but, while he was away his father had the crawler moved by a man named Pointer to Pointer's shop. After his return from South Dakota, Aubuchon, Jr., learned that his father had had the crawler moved, and at the trial testified that he had no objection to his father having taken the crawler because he owed money to his father. However, he also testified that upon his return he telephoned Pointer about getting possession of the crawler but objected to the amount Pointer said he would charge to move the machine, and did not regain possession of it.

Plaintiff related that he had first observed the crawler when he drove by the farm of Aubuchon, Sr., on which it was sitting. He was unable to state the date other than to say that it was "quite a period of time," around in the summer of 1971, before plaintiff contacted Aubuchon, Sr., by telephone, "the latter part of August," 1971. He inquired of Aubuchon, Sr., whether the crawler was for sale, an agreement for a sale was reached, and on September 1, 1971, plaintiff paid Aubuchon, Sr., $3,500.00 for the crawler, and Aubuchon, Sr., executed and delivered to plaintiff a Bill of Sale for the machine, signed by Aubuchon, Sr., and agreed to deliver the machine, which was then in the possession of Pointer. At the direction of plaintiff, Aubuchon, Sr., delivered the machine on September 3 or 4, 1971, to a repairman named Williams, situated in Lonedell, because plaintiff wanted Williams to check it over and make certain repairs on the crawler.

Aubuchon, Jr., had never made any payment on his obligation to defendant other than the down payment of $984.69, and plaintiff had twice spoken to Aubuchon, Jr., about the obligation. Shortly before September 20, 1971, defendant learned from Aubuchon, Jr., that the crawler was in Lonedell. He thereupon had Aubuchon, Jr., sign the following instrument marked as defendant's Exhibit C:

"Union, Mo.
"Sept. 20, 1971

"To: Donald Penrod

"You are hereby authorized to repossess John Deere Crawler tractor model #1010 serial #11235 without any necessity to replevy same: and I further state that Harvey Pointer performed no work or services upon the same upon my authority or upon the authority of any one acting for me

"/s/ x William F. Aubuchon

"Witness James B. Hanson"

Armed with that instrument and the buy-sell contract signed by Aubuchon, Jr., defendant on September 22, 1971, obtained possession of the crawler from Williams upon payment of the cost of repairs Williams had made on the machine. Plaintiff's replevin action followed on October 12, 1971.

There was evidence on plaintiff's behalf that prior to paying Aubuchon, Sr., for the crawler, plaintiff had orally agreed to rent it to Michael Congardi, at $50.00 per day. Congardi, who testified he was present when plaintiff paid the $3500.00 to Aubuchon, Sr., confirmed the rental agreement.

Since plaintiff's action was one in replevin it was incumbent upon him to

both plead and prove his right to the immediate possession of the crawler and that defendant was wrongfully detaining it. Auffenberg v. Hafley, Mo.App., 457 S.W.2d 929; Citizens Discount and Investment Corp. v. Wood, Mo.App., 435 S.W.2d 717. And it is a settled rule that a plaintiff's right of recovery depends upon the strength of his own claim, and not on the weakness of the defendants. First Nat. Bank of Clayton v. Trimco Metal Products Co., Mo., 429 S.W.2d 276. By that statement we do not mean to imply that at the time the suit was filed there was any weakness in defendant's title to the machine. On the contrary, we are of the opinion that full title was then in the defendant. It is true that the written buy-sell agreement between defendant and Aubuchon, Jr., on April 5, 1971, contained no provision for the retention of a security interest by defendant, as defined by § 400.1–201(37), RSMo 1969, V.A.M.S., and that absent such a reservation of a security interest title to the machine vested in Aubuchon, Jr., § 400.2–401(2). However, title to the crawler revested in defendant when defendant executed defendant's Exhibit C on September 20, 1971, § 400.2—401(4), unless, as plaintiff contends, that instrument was a legal nullity because it was made nineteen days after plaintiff had purportedly bought the crawler from Aubuchon, Sr.

Plaintiff does not base his right of recovery upon the authority given Aubuchon, Sr., to sell the crawler by plaintiff's Exhibit 2, executed by Aubuchon, Jr., on April 22, 1971. Nor, we believe, could he plausibly do so. Assuming, without deciding, that that instrument was valid despite its vagueness and generality, by its terms it clothes Aubuchon, Sr., with authority only during the absence of Aubuchon, Jr., and the evidence indicates that Aubuchon, Jr., had returned from South Dakota and was present in the area when the transaction between plaintiff and Aubuchon, Sr., occurred. Instead, plaintiff invokes the doctrine of equitable estoppel to support his right to recover, and argues that by reason of the conduct of Aubuchon, Jr., he was estopped from asserting title as against the plaintiff; and that defendant stands in the shoes of Aubuchon, Jr. That conduct, as detailed in plaintiff's brief, is that he knew Aubuchon, Sr., had taken possession of the crawler, did not seek or intend to regain possession of it, and in the meantime had executed plaintiff's Exhibit 2, the supposed authorization. Certainly the purported authorization to Aubuchon, Sr., could not furnish the basis for an estoppel because Aubuchon, Sr., did not represent to plaintiff that he was selling the crawler to plaintiff pursuant to such authority. In fact, the evidence indicates that at the time of the transaction between plaintiff and Aubuchon, Sr., plaintiff had no knowledge of the existence of that instrument or that Aubuchon, Jr., owned the equipment.

Plaintiff cites Prouse v. Schmidt, Mo., 156 S.W.2d 919, as setting forth the criteria that must be met before an estoppel will be invoked. We agree, of course, with the six tests enumerated in that decision, but when measured against the facts in the instant case it is obvious that plaintiff's case falls far short of meeting the very first: " * * * 'There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. * * *" (156 S.W.2d 921) In the instant case there was no silence on the part of Aubuchon, Jr., because he had no knowledge that Aubuchon, Sr., was about to attempt to sell the crawler, and as the Supreme Court stated in that case (156 S.W.2d 921) one may be estopped by silence only " * * * when he is under a duty to speak * * *." Nor does plaintiff claim that Aubuchon, Jr., said anything to plaintiff which would create an estoppel; in fact, so far as the record before us shows, neither of them ever saw each other before they appeared at the trial.

Thus in the final analysis the only conduct which plaintiff claims as creating an estoppel is that upon his return from South Dakota, Aubuchon, Jr., learned that his father had taken possession of the tractor and did not endeavor to regain possession of it. Even the latter part of that contention is by no means clear, for while in his testimony Aubuchon, Jr., stated that he had no objection to the taking by his father when he learned it had been taken, and made no attempt to obtain its return, he qualified that answer by testifying that he telephoned Pointer (who then had actual possession) to get it from Pointer, but objected to the amount Pointer demanded for having hauled it and " * * * the only action I attempted at the time was to seek to get like a replevin order to get my equipment from Mr. Pointer." In short, there was no conduct on the part of Aubuchon, Jr., which could be said to have induced the plaintiff to believe that Aubuchon, Sr., had the apparent authority from Aubuchon, Jr., to sell the crawler. Plaintiff's own evidence showed that he had never heard of Aubuchon, Jr., and that he purchased solely under the mistaken belief that Aubuchon, Sr., was the owner of the equipment, as the Bill of Sale to plaintiff implies.

Plaintiff's evidence also falls short of meeting other requirements for an estoppel laid down in Prouse, supra, but a discussion of them would only serve to unduly lengthen this opinion.

It is an established principle that by a purchase a vendee acquires no better title than that of his vendor. International Harvester Co. of America v. Tyler Warehouse Co., Mo.App., 253 S.W. 400; P. R. Walsh Tie & Timber Co. v. Chester, P. & S. G. R. Co., 184 Mo.App. 26, 167 S.W. 614. In the instant case Aubuchon, Sr., had no title to the crawler, and consequently plaintiff acquired none from him by reason of his purported sale.

Accordingly, the judgment is affirmed.

All concur.