**Sharon Y. SUMNERS, Appellant,**

v.

**Jerry L. SUMNERS, Respondent.**

**No. 67028.**

Supreme Court of Missouri,
En Banc.

Dec. 17, 1985.

Donald R. Duncan, Springfield, for appellant.

Jerry L. Reynolds, Larry B. Moore, Springfield, for respondent.

ROBERTSON, Judge.

This is an appeal of a decree of dissolution which, *inter alia*, set aside as the husband's separate property certain stock acquired in exchange for partnership assets. The Southern District reversed this portion of the judgment, based on the "source of funds rule" adopted by this Court in *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984). While considering the husband's motion for rehearing, however, that court noted a decision of the Eastern District to the effect that *Hoffmann* was not to be applied retrospectively to cases tried prior to its advent. *See Winter v. Winter*, (Mo.App.E.D., Nos. 48186, 48575) (cause retransferred by order of Supreme Court, Mo. banc No. 67054, 1985.) The Southern District therefore ordered the case transferred to this Court for resolution of that conflict. Treating this case as on original appeal, Mo. Const. art. V, § 10, we conclude that the rule in *Hoffmann* is to be applied retrospectively. The judgment of the trial court is reversed except insofar as it declares the marriage dissolved and provides for custody and visitation of the children of that marriage. The cause is remanded for retrial of the issues of property classification and division, maintenance, attorneys fees, and costs.

The parties were married on January 31, 1964. On September 30, 1963, the husband entered into a partnership agreement with Leonard Pollreis under which the partners agreed to purchase and own equal interests in vending machines. In a later agreement, on January 6, 1964, Pollreis agreed to sell the husband a one-half interest in 140 vending machines already owned by Pollreis. The purchase price for this interest was $2200, to be paid in monthly installments of at least $100. By the time of the marriage, the partnership owned 190 ma-

chines. The record does not disclose evidence of the portion of the purchase price paid during the marriage, nor of the source of funds for any such payments.

The partnership was incorporated in Nebraska on May 1, 1967. On that date, the partnership assets were transferred to the new corporation, which in turn issued equal quantities of stock to the two partners. The extent of property held as partnership assets at the time of the incorporation is not clear; however, the evidence includes the report of an audit conducted in 1965 which indicates that the partners then owned 2,600 machines and various inventory and equipment. The trial court evaluated the husband's interest in the corporation at $275,000 and declared it to be his separate property. However, prior to dividing the marital property equally between the spouses, the trial court added to the net value of the marital property $154,000 "representing just consideration of the value" of the stock. In this way, the stock was treated as if it were marital property worth $154,000 which was then distributed to the husband.

### I.

Among the grounds asserted in her motion for new trial, the wife urged that the trial court erroneously declared the stock to be the husband's separate property. She renews that argument here, relying now on *Hoffmann.* We agree that in declaring the stock to be separate property, the trial court's judgment either erroneously applied the law or was not supported by substantial evidence, and must therefore be reversed. *Dardick v. Dardick,* 670 S.W.2d 865, 868 (Mo. banc 1984); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The question of the characterization of property as either marital or separate for the purpose of dissolution is governed by Section 452.330, RSMo Cum.Supp.1984. That section states, in pertinent part:

2. For purposes of sections 452.300 to 452.415 only, **"marital property"** means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage; ...

*Id.* Prior to the decision in *Hoffmann,* the courts of this state followed the general rule, known as the "inception of title doctrine," that property is classified as marital or separate the moment title is taken, irrespective of when and how payment for the property is made. *Hoffmann,* 676 S.W.2d at 823–24; *Cain v. Cain,* 536 S.W.2d 866, 871 (Mo.App.1976). Nevertheless, in an attempt to ameliorate the unfairness resulting from a rigid application of this rule, courts imposed an obligation on the owner of separate property to reimburse the marital community for its contribution to the purchase of the separate asset. *Hoffmann* at 824.

In the present case, the husband took title to those partnership assets owned at the time of the marriage when he entered into the January 6 sales agreement, notwithstanding that the purchase price had not yet been paid. § 400.2–401, RSMo 1978; *Olson v. Penrod,* 493 S.W.2d 673, 676 (Mo.App.1973). Under the now disfavored inception of title doctrine, those assets would have remained the husband's separate property, and any property "acquired in exchange for" those assets would have retained its separate characterization, § 452.330.2(2).[1]

---

1. By contrast, since the husband's interest in the partnership consisted of *pro rata* ownership of specific property rather than a *pro rata* interest in an entity which in turn owned property,

§ 358.250, RSMo 1978, any partnership assets acquired after the marriage would be presumptively marital. § 452.330.2.

Under *Hoffmann*, however, "the character of the property is determined by the source of funds financing the purchase. The property is considered to be acquired as it is paid for...." *Hoffmann* at 824. Thus, partnership assets paid for with marital funds—for example, salary earned by a spouse during the marriage—would be characterized as marital, with the result that stock acquired in exchange for these assets would retain the marital classification.

In this case, there was no evidence either that the purchase price for the assets in question was paid before it was due or that the husband's separate funds were used to purchase it. The only evidence is that the purchase price for the assets was due, for the most part, during the marriage. Thus, there was no substantial evidence for any conclusion other than that most of the partnership assets were paid for during the marriage. Under the source of funds rule, these assets were acquired during the marriage. According to § 452.330 it must therefore be presumed that the assets were marital. To the extent it was purchased with marital assets, the stock must also be considered marital. Thus, the trial court's judgment either erroneously applied the law or was not supported by substantial evidence.

Even if this Court were to consider the trial court's judgment as having, in effect, characterized the stock as marital property to the extent of $154,000, reversal would nevertheless be required. There is no substantial evidence to support such a *pro tanto* division either under a theory that marital funds were used to purchase the partnership assets or a theory that partnership assets acquired during the marriage were used to purchase a portion of the stock, since there is no evidence of the extent to which marital funds were used to purchase the partnership assets or of the relative value of partnership assets acquired during the marriage.

The same factor which accounts for the dearth of evidence relative to the source of funds rule—that *Hoffmann* had yet to be decided at the time of trial—also provides the basis for remanding this cause for a new trial. This court, when previously confronted with a similar situation, stated that:

> [W]e are of the opinion that it would be improper and unfair to the parties, to decide this case on the record made when all the parties, in the presentation of their evidence, and the trial court, in entering its findings and conclusions of law, were operating pursuant to the rule announced in the [overruled] cases.

*Dietz v. Humphreys*, 507 S.W.2d 389, 392 (Mo.1974). Accordingly, this Court ordered the judgment reversed and remanded the case for further proceedings. *See also Roth v. Roth*, 571 S.W.2d 659, 672 (Mo.App. 1978) (remand to apply intervening decision in *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978)).

## II.

Having concluded that the application of the *Hoffmann* rule in the present case would require remand, it is necessary to determine whether that decision operates retrospectively to govern the division of property in this case. We conclude that it does.

"At common law there was no authority for the proposition that judicial decisions made law only for the future. Blackstone stated the rule that the duty of the court was not to 'pronounce a new law, but to maintain and expound the old one.'" *Linkletter v. Walker*, 381 U.S. 618, 622–23, 85 S.Ct. 1731, 1733–34, 14 L.Ed.2d 601 (1965) (footnote and citation omitted). Thus, a change in the law by *judicial decision* related back to past transactions and occurrences within its ambit as well as to future events. *Id.*; Traynor, "Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility," 28 Hastings L.J. 533, 535 (1977) [hereinafter Traynor].

In the specific context of changes in the pertinent law while a case is on appeal, Chief Justice Marshall stated:

It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.

*United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). While this rule was originally announced in the context of a change in applicable treaty provisions, it has been held to apply to changes in *decisional* law. *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *see also Jones v. Wyrick*, 557 S.W.2d 250, 252 (Mo. banc 1977) (applying intervening decision to judgment on appeal); *Roth, supra.*

Recognizing the existence of the general rule of retroactive effect of changes in the law wrought by its decisions, this Court has also recognized its authority to declare whether such decisions are retroactive or prospective "based on the merits of each individual case." *Keltner v. Keltner*, 589 S.W.2d 235, 239 (Mo. banc 1979). The United States Supreme Court has found the practice of prospective-only application of decisions constitutional "whenever injustice or hardship will thereby be averted." *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).

This Court's approach to the retroactive/prospective issue has provided two exceptions to the general rule of retroactivity. The first exception is found when the change pertains to procedural as opposed to substantive law. *State v. Shafer*, 609 S.W.2d 153, 157 (Mo. banc 1980). This exception is inapposite here, however, since the change announced in *Hoffmann* is substantive.

The second exception turns on the issue of fundamental fairness and is often expressed as a question of reliance. If the parties have relied on the state of the decisional law as it existed prior to the change, courts may apply the law prospectively-only in order to avoid injustice and unfairness.

One of the most important factors considered by the courts "in deciding whether and to what extent a judicially changed rule of law should be given retroactive effect" is "the degree to which the prior rule may have been justifiably relied on". Annot. 10 A.L.R.3d 1371, 1378 (1966).

*Keltner*, 589 S.W.2d at 240. *See also Shafer*, 609 S.W.2d at 157; *Ingle v. Illinois Central Gulf Railroad Co.*, 608 S.W.2d 76, 82 (Mo.App.1980).

Even where, as here, a judicial decision changes the construction of a statute, prospective-only application depends on the presence of reliance by the parties.

[W]here a statute or law has received a given construction by a court of last resort, the ... parties who have acted in conformity with, and *in reliance upon*, such construction ..., are not in any wise impaired ... by reason of a change in the construction of the same statute made by a subsequent decision of the court of last resort ... and the effect of the change in judicial construction is that it operates prospectively ... in the same manner as though the statute or law had been amended by the Legislature. [Emphasis added.]

*Eberle v. Koplar*, 85 S.W.2d 919, 923 (Mo. App.1935). *See also State ex rel. May Department Stores v. Haid*, 327 Mo. 567, 38 S.W.2d 44, 53–54 (Mo. banc 1931); *Klocke v. Klocke*, 276 Mo. 572, 208 S.W. 825, 827 (banc 1919).

By applying a decision prospectively-only when reliance by a party is found, courts seek to avoid injustice, hardship and unfairness. *See Sunburst Oil, supra;* Leflar, "Sources of Judge-Made Law," 24 Okla.L. Rev. 319, 333–34 (1971). A standard which seeks to avoid injustice, hardship and unfairness requires that the interests of parties on both sides of the prospective-retrospective issue be weighed. A court must balance the hardship imposed on those who may have relied on a precedent against the hardship which may result for those who

do not benefit from the application of a change in precedent.

■ In order to clarify the issues regarding the operation of judicial decisions, we adopt a three-factor test to determine whether an overruling decision of this Court should be given prospective-only effect. First, the decision in question "must establish a new principle of law ... by overruling clear past precedent...." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Second, the Court must determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective operation. *See Linkletter, supra*, 381 U.S. at 629, 85 S.Ct. at 1737. Third, the Court must balance the interests of those who may be affected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule. *See Traynor* at 561.

With respect to the first factor, the *Hoffmann* decision might be thought to satisfy the threshold for prospective-only operation, in that it overruled decisions by the Court of Appeals which had adopted the inception of title doctrine. The showing is less forceful than might be, however, inasmuch as the superseded decisions are not those of the court of last resort, and none of the superseded cases involved corporate shares.

The second factor militates in favor of retroactivity. This Court adopted the source of funds rule to promote the concept of marital partnership, to permit the marital community to share in property which was purchased with marital funds, and to prevent sophisticated spouses from converting marital funds into separate property. *Hoffmann* at 824–25. The application of this rule retroactively permits the non-owning partner in the marital community to participate in the division of property which has already been purchased with marital funds. Retrospective operation enhances the purpose and effect of the source of funds rule.

Application of the third factor also favors retroactivity. Reliance "bespeaks a voluntary choice of conduct by the person harmed. It infers that the person exercising it can decide between available alternatives." *Barnam v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 537 P.2d 618, 622 (1975). Even were we to assume reliance by an "owning" spouse on the inception of title doctrine in ordering his affairs,[2] the goal of such reliance in this context would have been to shield the "non-owning" spouse from sharing that portion of the value of an asset acquired with marital funds. Against this reliance we must balance the hardship to the non-owning spouse. By applying the source of funds rule prospectively-only, the non-owning spouse would be deprived of any benefit of the funds and effort of the marital community used to enhance the value of the asset. This is exactly the injustice which led the Court to adopt the source of funds rule in *Hoffmann*. We believe that the balance tips strongly in favor of retrospective operation of the *Hoffmann* rule.

Husband urges that this Court, in its opinion in *Hoffmann*, has already decreed the prospective-only application of that decision. Husband's argument rests on a statement in *Hoffmann* that "[p]ast Missouri cases applying the inception of title rule ... should no longer be followed in that regard." *Id.*, 676 S.W.2d at 825. In *State v. Shafer, supra*, this Court said:

The reasons for prospective application of [*State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979)] are quite simple. First, it is clear from the quoted language, *Euell* was not intended to have retrospective

---

**2.** Section 452.330.2(4) allows parties to a marriage to exclude property from marital property status by a valid agreement between them. The existence of a valid antenuptial agreement would make the application of the source of funds rule unnecessary. No such agreement exists in the present case.

application, for as noted, the court announced that [*State v. Frazier*, 550 S.W.2d 590 (Mo.App.1977)] "should no longer be followed," and this could only refer to cases tried after June 29, 1979. *Id.* at 157. Similar language appears in *In re the Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972). The *LaGarce* court said:

It follows from the foregoing that the Jenkins and Wantuck cases, supra, and others with similar holdings, to the extent that the conflict with the views heretofore set out, should no longer be followed.

*Id.* at 501. *Dietz, supra,* held *LaGarce* to be retroactive.

The language "should no longer be followed" of itself is not an indication of whether the court intended prospective-only application of its decision. In *Shafer*, the court applied the decision prospectively-only not because *Euell* used the words "should no longer be followed", but because *Euell* worked a procedural change in the law. In *Dietz*, the court recognized that the *LaGarce* opinion changed substance; the "should no longer be followed" language was not a consideration in *Dietz*. It was the procedural/substantive dichotomy which was determinative in both cases. Because *Hoffmann* renders a change in substance, husband's reliance on *Shafer* is misplaced.

The "source of funds rule" as announced in *Hoffmann* should be retrospectively applied and is, therefore, applicable to the instant case. The judgment with respect to the division of property must be reversed and remanded for new trial.

Since any award of maintenance depends in the first instance upon a finding that the spouse seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs," § 452.335, RSMo 1978, the trial court's award of maintenance in favor of the wife also must be remanded for reconsideration. Similarly, since trial courts are commanded to take into account "all relevant factors including the financial resources of both parties" before making an award of attorneys fees or suit costs, § 452.355, RSMo 1978, these awards must also be remanded for reconsideration.

One remaining issue regarding the division of marital property is likely to arise again on remand and will therefore be addressed here. The wife contends that the trial court improperly considered the delinquent temporary maintenance obligation of the husband as both a marital asset (distributed to the wife) and a marital debt (distributed to the husband). She is correct. The unpaid obligation was not a debt of the marital community, because it was not owed by that community to a third party. Instead, it was owned by one part of the community to another. By the same reasoning, the property component of the delinquent obligation was not marital property. On retrial, the unpaid maintenance should not be considered as marital property or debt to be allocated between the parties.

The trial court's judgment is hereby reversed and remanded for retrial consistent with this opinion.

All concur.