**TRANS UCU, INC., Appellant,**

v.

**DIRECTOR OF REVENUE,
Respondent.**

**No. 72703.**

Supreme Court of Missouri,
En Banc.

May 3, 1991.

Rehearing Denied June 11, 1991.

William H. Sanders, Sr., Karl Zobrist, Winn W. Halverhout, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Trans UCU, Inc. (UCU) appeals the Administrative Hearing Commission decision requiring payment of use tax on UCU's purchase and operation of a company plane hangared in Missouri. Because resolution of the issue requires construction of Missouri's taxing statute, § 144.610.1, RSMo, 1986, the cause falls within the ambit of this Court's exclusive appellate jurisdiction. Mo.Const. art. V, § 3. We reverse and remand.

The facts are not in dispute. UCU is a Delaware corporation with its principal office in Kansas City, Missouri and on March 7, 1986, it purchased a 1981 Dessault AMD–BA Falcon 20F aircraft for $1,500,000. UCU purchased and took delivery of the plane at Wilmington, Delaware, and in so doing relied on this Court's ruling in *King v. L & L Marine Service, Inc.*, 647 S.W.2d 524 (Mo. banc 1983), believing that by purchasing the plane out-of-state and by placing it immediately in interstate commerce the transaction fell beyond the reach of Missouri's use tax laws.

Immediately on taking possession, the plane with several UCU employees was flown to Teterboro, New York, for a company business meeting. Thereafter it was flown to the Kansas City Downtown Airport and, until its sale in January 1989, the plane was hangared at the Executive Beechcraft facility in Kansas City. During that time, the aircraft logged 1,075.5 flight hours, of which 1,053.8 hours (98.4%) were interstate flights.

On July 14, 1987, this Court overruled its 1983 holding of *L & L Marine* by opinion in *Director of Revenue v. Superior Aircraft Leasing Co.*, 734 S.W.2d 504 (Mo. banc 1987). Learning of this ruling, UCU again consulted its attorney regarding the need to file a use tax return in connection with its purchase and use of the aircraft. The attorney opined that the *Superior Aircraft* ruling was prospective only and did not apply to UCU's purchase. Believing it was secure in this information, UCU took no further steps. However, in October 1988, the Director of Revenue (Director) conducted an audit of UCU's financial records and

from that audit assessed $63,375.00 in unpaid use tax with interest in the amount of $19,438.25 and a penalty of $15,843.75 for the purchase and use of the aircraft in Missouri. UCU paid the tax, penalty and interest under protest. On December 21, 1988, the Director denied UCU's protest and UCU sought review by the Administrative Hearing Commission (Commission) where the cause was submitted upon stipulated facts. The Commission determined the tax and interest were appropriately assessed against UCU but that assessment of the penalty was improper in as much as UCU's reliance upon *L & L Marine* in not filing a tax return for the aircraft was made in good faith. UCU appealed.

In its challenge to the Commission's decision, UCU advances two arguments, one constitutional and the other regarding the Commission's inappropriate *retrospective application* of this Court's ruling in *Superior Aircraft* to the transaction at bar. Because we sustain UCU's contention as to the retrospective application of the decision in *Superior Aircraft,* we need not address the constitutional argument.

Section 144.610.1, RSMo 1986, provides that "[a] tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property." In 1983 this Court in *King v. L & L Marine Service, Inc.,* held that such tax attaches only if the property purchased outside of the state would have been subject to the sales tax had it been purchased in Missouri. *Id.* at 526. Further that Missouri could not impose a tax on a transaction of interstate commerce. *Id.* There a business with its principal office in Missouri purchased an aircraft in Delaware for the specific purpose of avoiding this state's sales and use tax laws. On the date of delivery in Delaware, a vice-president for L & L Marine flew the aircraft to New Jersey for a meeting to conduct corporate business in that state before the plane proceeded to St. Louis. Thereafter the plane was hangared and serviced in Missouri, and of its 531 flights only 20 were wholly intrastate. In that instance we held that before the plane had reached Missouri it had been placed, albeit fleetingly, in interstate commerce and its preponderant use as a vehicle for *interstate* commerce exempted it from Missouri's use tax. *Id.* at 527. Given that the dispositive facts in UCU's purchase and use of its aircraft are essentially the same as those of *L & L Marine Service, Inc.,* UCU's aircraft was most certainly exempt from Missouri's use tax laws under our holding in *L & L Marine.*

However as noted above, on July 14, 1987, this Court changed directions in *Director of Revenue v. Superior Aircraft Leasing Company, Inc.,* 734 S.W.2d 504 (Mo. banc 1987), and decided to abandon the "taxable moment doctrine" discussed by the United States Supreme Court as early as 1939. As noted by this Court in *Air Evac EMS v. Director of Revenue,* 779 S.W.2d 573 (Mo. banc 1989):

It was the early doctrine that a state could not impose a tax on the transaction of interstate commerce, even though not discriminatory. That rule rested on the premise that the commerce clause created an area of trade free from interference by the states. *Freeman v. Hewit,* 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265 (1946). A state could, however, validly tax events preliminary to interstate commerce: at a "taxable moment" when the article had reached the end of interstate transportation and had not begun to be consumed in interstate operation. *Southern Pac. Co. v. Gallagher,* 306 U.S. 167, 177, 59 S.Ct. 389, 393–94, 83 L.Ed. 586 (1939). It was the "taxable moment" analysis that this Court adopted and followed in *L & L Marine Service, Inc.* to assess the validity of a use tax.

*Id.* at 575. Notwithstanding this Court's reliance on the "taxable moment doctrine" in measuring Missouri's use tax law against interstate use of aircraft such as that in *L & L Marine,* and even though the Court in 1983 was aware of *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), less than four years later, in *Superior* (July 1987) this Court reversed itself, abandoned the "taxable moment doctrine" and adopted the 1977 nexus test of *Brady* thus permit-

ting Missouri a greater reach to tax transactions of interstate commerce. In *Superior* we recognized that states have a limited right to tax interstate commerce but that limitation had been loosened somewhat in the four-part test enunciated in 1977 by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). By switching to the *Brady* test the Court in *Superior* found that when an aircraft even though it was purchased out of state and hangared in Ohio and though it was principally used in interstate flights, nevertheless because it was owned by a Missouri corporation doing business in Missouri and had roughly twenty percent of its flights to Missouri the "nexus" requirement of *Brady* was met and accordingly the "use" of the plane was subject to Missouri's use tax. *Director of Revenue v. Superior Aircraft Leasing Company, Inc.*, 734 S.W.2d at 507. The final sentence of the opinion ends with *"King v. L & L Marine Service* should no longer be followed." *Id.* at 508. Thus it seems apparent that had *Superior Aircraft* been the law at the time of UCU's purchase of the aircraft, the transaction and use of the aircraft would have sufficed as a basis for use tax liability under § 144.610, RSMo 1986. The question now posed is whether the holding in *Superior Aircraft* should be given retrospective application in the case at bar.

█ In *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985), this Court adopted a three-factor test to determine whether an overruling decision should be given prospective-only effect. First the decision in question "must establish a new principle of law ... by overruling clear past precedent." *Id.* at 724. No clearer example of this can be found than in the present matter before us. Prior to July 14, 1987, this Court had stated that aircraft purchased outside of the state but placed in interstate commerce before entering this state and continued thereafter principally in interstate commerce could not be subjected to Missouri's use tax. As previously discussed, in *Superior Aircraft* this Court reversed itself establishing a new principal

allowing taxation and explicitly overturning "clear past precedent".

The second prong of the *Sumners'* test requires that this Court "determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective operation." *Sumners v. Sumners*, 701 S.W.2d at 724. In *Superior Aircraft*, we held that the purpose of the use tax was to "complement, supplement and protect the sales tax" by eliminating "the incentive to purchase from out-of-state merchants in order to escape local sales taxes thereby keeping in-state merchants competitive with sellers in other states." *Id.* at 506. Further, the use tax provides a means to augment state revenues. *Id.* As to the need to protect the sales tax, while an important purpose, is not impacted by our decision today to apply *Superior Aircraft* prospectively. Because UCU's purchase and placing the aircraft in interstate commerce was a *fait accompli* long before our decision in *Superior Aircraft*, it can not be said that a retrospective attachment of the Missouri use tax to such transaction would keep "in-state merchants competitive with sellers in other states". "In-state merchants" cannot benefit from placing a tax liability on customers after the fact. To be effective, the potential tax liability must be known before the sale so the purchaser may weigh such factor when selecting a merchant. As to the augmentation of state revenues, this invariably will tend to favor retrospective application when the Court enlarges the state's taxing authority, but such should be considered only in the light of the other applicable factors and purposes of the rule.

The third prong requires this Court to "balance the interests of those who may be affected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule." *Sumners* at 724. The parties stipulated that UCU's decision to purchase the aircraft in Delaware was in reliance on this Court's opinion in *L & L Marine*.

There is no dispute that if this Court were to hold *Superior Aircraft* applied retroactively, UCU would be found to have detrimentally relied upon what was then the law of this state and that it did so upon advice of counsel. Further UCU upon this Court's pronouncement in *Superior Aircraft* again sought legal advice and was reassured it was free from liability. Finally, our opinion in *Superior Aircraft* is silent as to whether it is to be given retroactive or prospective application. At the time UCU purchased the plane it was free from use tax liability and the Director could not have successfully collected use tax revenue from UCU. Accordingly, Missouri could have had no expectation of use tax benefit but the state now attempts to avail itself of this Court's unanticipated change of direction. It reasonably follows that the hardship of UCU having to pay $100,000 is greater than the disallowance of this State from collecting $100,000 the State did not reasonably anticipate until after the fact.

■ Having met the terms of the *Sumners'* test, we hold that our decision in *Superior Aircraft* is to be afforded prospective application only and UCU is not liable for the use tax, penalties and interest assessed against it by the Director for its 1986 purchase of the aircraft and subsequent hangaring in this state. In so holding, we are mindful of our previous ruling in *Air Evac EMS, Inc. v. Director of Revenue*, 779 S.W.2d 573 (Mo. banc 1989), in which under a partially similar fact pattern, tax liability was imposed upon the complaining taxpayer. That case is distinguishable in several significant aspects from the case *sub judice*. In *Air Evac*, the taxpayer had not shown that it relied upon *L & L Marine* when making its out-of-state purchase of the aircraft involved. Further aircraft in *Air Evac* had not yet entered into the flow of interstate commerce when brought to Missouri:

> It was only after entry into Missouri, the evidence stipulates, that "[Air Evac] used [the helicopter to conduct its business inside and outside of Missouri." That is to say none of the helicopters was placed in interstate commerce until

after the incidence of a "taxable moment" on the storage and use of the aircraft under § 144.610, RSMo 1986. Thus, even had reliance on *L & L Marine Service* been shown, that reliance would not have been justified under the facts. *Id.* at 576.

This case is remanded to the Commission for further proceedings in accordance with this opinion.

Reversed and remanded.

ROBERTSON, HIGGINS, COVINGTON and HOLSTEIN, JJ., and MORGAN, Senior Judge, concur.

BLACKMAR, C.J., dissents in separate opinion filed.

BILLINGS, J., not sitting.

BLACKMAR, Chief Justice, dissenting.

This Court misapplies the doctrine of *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985), thereby allowing this taxpayer to reap a windfall.

In *King v. L & L Marine Service, Inc.*, 647 S.W.2d 524 (Mo. banc 1983), this Court held that federal constitutional considerations precluded the state of Missouri from applying its use tax statutes to a transaction legally indistinguishable from the one now before us. The opinion made it clear that the tax was due and payable under our statutes, but yielded to federal compulsion as it saw it.

In *Director of Revenue v. Superior Aircraft*, 734 S.W.2d 504 (Mo. banc 1987), we realized that we had viewed the federal authorities too restrictively and overruled *L & L Marine*. Both *L & L Marine* and *Superior Aircraft* demonstrate that the transaction now in issue was taxable under Missouri law.

The taxpayer in this case expected a benefit from purchasing the aircraft in another state and making a nominal use of the plane before exercising "the privilege of storing, using or consuming" its purchase in Missouri. § 144.610, RSMo 1986. But there was no detrimental reliance. When asked at oral argument what the taxpayer might have done if it had known of the

*Superior* decision, counsel replied that it might have made the purchase in Missouri, paying Missouri sales tax rather than Missouri use tax. By the result of the principal opinion, the state of Missouri loses twice. It loses the possible sale and the attendant tax, and also loses the benefit of the use tax designed to protect the Missouri treasury from out-of-state purchases designed for use in Missouri.

The first part of *Sumners* is clearly satisfied. The second prong of the *Sumners* test, however, does not apply because the policy of our use tax statutes is thwarted if the taxpayer brings property into Missouri without paying the use tax our statutes demand. The third prong does not apply because the taxpayer is seeking a windfall in the form of tax avoidance, and this interest is outweighed by the state's proper interest in protecting its revenue.

*Sumners* applied a statute retroactively, and so its promulgation of guidelines for prospective application is suspect. Retroactive application of substantive holdings is the general rule, and prospective application should be decreed only in exceptional cases of which this is not one.

The majority attempts to distinguish *Air Evac EMS, Inc. v. Director of Revenue*, 779 S.W.2d 573 (Mo. banc 1989), by arguing that case is factually distinguishable. On the contrary, the two cases are virtually identical. In *Air Evac*, this Court stated:

> The evidence was stipulated that each of the aircraft was purchased outside Missouri, was reconditioned and refueled en route, and then was flown by a corporate officer to the base of operations in West Plains, Missouri. An incidental stop was made during one flight to drop off the corporation officer in Arkansas.

In the present case, Trans UCU took delivery in Delaware and flew immediately to New York. Apparently on the same day, the plane was flown to Missouri. The flight to New York could easily be characterized as an incidental stop, just as the flight to Arkansas was in *Air Evac*. Therefore, the arguments presented by Trans UCU have been previously rejected by this Court, and precedent dictates these arguments be rejected again. This Court should apply the correct law, just as it did in *Air Evac*.

I would affirm the decision.