Jamie Marie (Bunger) PRAYSON,
et al., Appellants,

v.

KANSAS CITY POWER & LIGHT
COMPANY, Respondent.

No. WD 44932.

Missouri Court of Appeals,
Western District.

Dec. 22, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 22, 1992.

Application to Transfer Denied
March 23, 1993.

William H. Pickett, David T. Greis, Kansas City, for appellants.

Robert P. Gingrich, Jr., Derek E. Wood, Kansas City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

ULRICH, Judge.

Jamie Marie Prayson and Jason Dean Prayson, siblings, appeal from the judgment n.o.v. in favor of defendant Kansas City Power & Light Company (KCP & L), following trial in which the jury's verdict awarded appellants $1,300,000 for the wrongful death of their father, Larry Dean Bunger. The Praysons contend that the trial court erred (1) in applying *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. banc 1991), retroactively and (2) in finding that Count I of their second amended petition failed to state a cause of action and denying their motion for leave to file the petition. The Missouri Supreme Court in *Zueck* directed that the inherently dangerous exception to the rule that a landowner is not liable to the injured employee of an independent contractor no longer applies where the employee is covered by workers' compensation insurance. *Id.* at 390.

The trial court's judgment n.o.v., applying *Zueck* retroactively, is affirmed.

Jason and Jamie (Bunger) Prayson are the natural children of Larry Dean Bunger. Mr. Bunger was an employee of B & L Electric, Inc. (B & L), an independent contractor hired by KCP & L to install lightning arrestors and to squirrel-proof certain transformers on KCP & L utility poles in the Kansas City area. Mr. Bunger was performing this work on January 18, 1985, when the non-insulated wrench he was holding in his right hand slipped off the de-energized bottom portion of a fuse mounting and came into contact with the top of the fuse mounting, which was still energized with electricity. Mr. Bunger was electrocuted.

Following Mr. Bunger's death the Praysons filed a claim for workers' compensation death benefits against B & L. The Praysons and B & L entered into a compromise structured settlement of that claim which was approved by the Division of Workers' Compensation.

On January 15, 1988, the Praysons filed suit against KCP & L in a single-count petition alleging that KCP & L's negligence was the direct cause of Mr. Bunger's death. On January 23, 1991, the Praysons sought leave of the trial court to file a Second Amended Petition, splitting their claim against KCP & L into Count I, alleging KCP & L was negligent and directly liable for Mr. Bunger's wrongful death, and Count II, alleging KCP & L was vicariously liable under the "inherently dangerous activity" doctrine. The trial court denied leave to amend on the ground that Count I failed to state a cause of action. The Praysons filed their Third Amended Petition on February 4, 1991, stating only a claim for vicarious liability, and proceeded to trial. On February 13, 1991, the jury rendered its verdict in favor of the Praysons in the amount of $2,000,000. By finding Mr. Bunger to have been 35% at fault, the jury reduced the award to $1,300,000.

KCP & L filed a Motion for Judgment n.o.v., or in the alternative, for a new trial, on February 26, 1991. While these motions were pending, the Missouri Supreme Court handed down its decision in *Zueck* (decided May 3, 1991). The trial court held that the *Zueck* decision applied retroactively, and therefore granted KCP & L's motion for judgment n.o.v. on May 24, 1991.

## I.

The issue presented in point I is whether *Zueck* applies retroactively. If the accident which caused Mr. Bunger's death occurred today, under *Zueck*, KCP & L would not be vicariously liable for Mr. Bunger's death. However, Mr. Bunger's death occurred before the supreme court decided *Zueck*. *Zueck* instructs that a landowner who employs an independent contractor is not vicariously liable for the injuries sustained by an employee of the independent contractor whose injuries are caused by an inherently dangerous condition if the employee is covered by Workers' Compensation Insurance. *Zueck*, 809 S.W.2d at 390. The Praysons argue that *Zueck* is prospective because its teaching is procedural rather than substantive. They assert in the alternative that if *Zueck* is a substantive decision, it meets the three-prong test of *Sumners v. Sumners*, 701 S.W.2d 720 (Mo. banc 1985), for prospective-only application.

Both the Eastern District and this court have already determined the issue of whether *Zueck* applies retroactively. In *Aubuchon v. Hyland*, 820 S.W.2d 613 (Mo. App.1991), the Eastern District applied the *Sumners* analysis to *Zueck* and found that "*Zueck* must be applied retroactively." *Id.* at 617. This Court, concurring in the rationale expressed in *Aubuchon*, recently applied *Zueck* retroactively, also. *Goodrum v. Kansas City Power & Light Co.*, 841 S.W.2d 274 (Mo.App.1992).

Further historical review and analysis of the courts' treatment of whether a landowner is vicariously liable to the injured employee of an independent contractor who is injured because of the inherently dangerous activity of the contractor may be helpful. At common law, one who contracts with an independent contractor is not liable for bodily harm caused by the torts of the contractor or the contractor's servants. *Zueck*, 809 S.W.2d at 384. An exception to the general rule exists where the activity undertaken by the independent contractor is inherently dangerous. *Id.* The common law subjects the landowner to liability for injuries resulting to innocent third parties caused by the independent contractor's failure to take special or reasonable precautions against inherent risks or dangers. *Id.*

Whether employees of independent contractors are included among "innocent third parties" to which landowners are vicariously liable has been answered both ways by the Missouri Supreme Court in the past. In *Salmon v. Kansas City*, 241 Mo. 14, 145 S.W. 16 (1912), the supreme court held that the inherently dangerous activity exception was not applicable to servants of the independent contractor. *Id.* 145 S.W. at 24. Sixteen years later, the supreme court overruled *Salmon* and extended the inherently dangerous exception in *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (Mo. banc 1928), to employees of independent contractors, making the landowner vicariously liable for the employee's injuries. *Id.* 6 S.W.2d at 624–27. The supreme court abandoned *Mallory* in *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518 (Mo. banc 1977), where the court allowed the employee of an independent contractor a cause of action against a landowner only if the employee could show the landowner negligently failed to ensure that adequate precautions were taken to avoid injury from the inherently dangerous activity and that such negligence caused the employee's injury. *Id.* at 523. The supreme court returned to the *Mallory* standard in *Ballinger v. Gascosage Electric Cooperative*, 788 S.W.2d 506 (Mo. banc 1990), eliminating *Smith's* requirement of owner negligence. *Id.* at 511. The supreme court's last pronouncement on the issue came sixty-three years after *Mallory* in *Zueck*, where the court held that in light of the advent of workers' compensation laws, the inherently dangerous exception no longer applies to employees of independent contractors covered by workers' compensation. *Zueck*, 809 S.W.2d at 388–90. The supreme court overruled *Mallory* and all cases following *Mallory*. *Id.* at 390.

In *Sumners v. Sumners*, 701 S.W.2d at 723, the Missouri Supreme Court recognized the general rule that a change in the law by judicial decision is to be given retro-

active effect. While acknowledging the general rule, the court also acknowledged it had the authority "to declare whether such decisions are retroactive or prospective 'based on the merits of each individual case.'" *Id.* at 723 (quoting *Keltner v. Keltner,* 589 S.W.2d 235, 239 (Mo. banc 1979)), and noted that its approach to the "retroactive/prospective issue" has provided two exceptions to the general rule of retroactivity. *Sumners,* 701 S.W.2d at 723.

█ The first exception "is found when the change pertains to *procedural* as opposed to *substantive* law." *Id.* (emphasis added). Such procedural decisions are to be given prospective effect only. *State v. Shafer,* 609 S.W.2d 153, 157 (Mo. banc 1980). The second exception turns not on whether the change in the law is procedural or substantive, but on the issue of fundamental fairness. *Sumners,* 701 S.W.2d at 723. The supreme court adopted a three-part test to resolve the issue of fairness in determining whether an overruling decision should be given prospective-only effect:

> First, the decision in question must establish a new principle of law ... by overruling clear past precedent.... Second, the Court must determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective operation.... Third, the Court must balance the interests of those who may be affected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule.

*Id.* at 724 (citations omitted).

*Aubuchon* and *Goodrum* concluded that *Zueck* announced a substantive, not procedural, change in the law. *Aubuchon,* 820 S.W.2d at 616–17; *Goodrum,* 841 S.W.2d at 275. "The distinction between substantive law and procedural law is that 'substantive law relates to rights and duties which give rise to a cause of action,' while procedural law 'is the machinery for carrying on the suit.'" *Shepherd v. Consumers*

*Coop. Ass'n,* 384 S.W.2d 635, 640 (Mo. banc 1964) (quoting *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 378 (1937)). Before *Zueck,* one who contracted with an independent contractor could be held vicariously liable, under the inherently dangerous exception, for the injuries sustained by the employees of the independent contractor. *See Mallory,* 6 S.W.2d at 624–27. Thus, a cause of action existed against the owner for injuries suffered by the independent contractor's employees caused by an inherently dangerous condition. After *Zueck,* the inherently dangerous exception no longer applies to employees of independent contractors covered by workers' compensation. *Zueck,* 809 S.W.2d at 390. The common law general rule that one who contracts with an independent contractor has no vicarious liability for the torts of an independent contractor remains in force for employees covered by workers' compensation.

While a cause of action once existed against a landowner on a theory of vicarious liability for the torts of an independent contractor resulting from an inherently dangerous condition, after *Zueck,* that cause of action can no longer be asserted. Since *Zueck* extinguishes the rights of employees of independent contractors to bring a particular cause of action, *Zueck* states a substantive change in the law, and does not fall within *Sumners'* first exception to retroactive application.

The *Aubuchon* court also applied the three-part fundamental fairness test, the second *Sumners* exception. Once again, the court correctly found that fundamental fairness leads to retroactive application of *Zueck.*

The first factor in the *Sumners* fairness test to determine whether an overruling decision of the court should be given prospective-only effect is whether the decision "establish[es] a new principle of law ... by overruling clear past precedent...." 701 S.W.2d at 724 (citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971)). In *Chevron,* the United States Supreme Court includes another method in the first factor by which

a new principle of law may be established, and the conditions necessary for that method, to qualify for prospective-only application: "First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... *or by deciding an issue of first impression whose resolution was not clearly foreshadowed.*" *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (emphasis added). *Zueck* does not require retroactive application under either of the methods in *Sumners'* first fairness factor.

The *Aubuchon* court found that *Zueck* did not establish a new principle of law by overruling clear past precedent because *Zueck* "reflects a return to the state of the law pre-*Mallory.*" *Aubuchon,* 820 S.W.2d at 617. By eliminating the inherently dangerous activity exception for the employees of independent contractors, *Zueck* does result in a return to the general common law rule in effect before *Mallory.* However, even if *Zueck* results in a new principle of law (in light of the fact that the impact of workers' compensation on the question of whether the employees of independent contractors are included in the inherently dangerous activity exception had not been considered by the Missouri Supreme Court before *Zueck*), this new rule is not established by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

Although *Zueck* overrules *Mallory* and all cases following *Mallory,* neither *Mallory* nor *Ballinger,* which followed *Mallory,* can be considered clear past precedent on the issue of whether the inherently dangerous activity exception should be applied to employees of independent contractors covered by workers' compensation, the issue considered in *Zueck.* *Mallory* involved an accident suffered by an employee prior to the effective date of Missouri's first workers' compensation law, and did not consider the impact of the new law. *Zueck,* 809 S.W.2d at 387. *Mallory* could not establish clear precedent on the issue presented in *Zueck.* While *Ballinger* was decided after the effective date of workers' compensa-

tion laws, "the dispositive issue [in *Zueck* ] ... was not before the court in *Ballinger.*" *Zueck,* 809 S.W.2d at 387.

While *Zueck* may establish a new principle of law by deciding an issue of first impression, the resolution of this issue was clearly foreshadowed. As the *Zueck* court notes,

> With the advent of Workers' Compensation Laws, most states have restricted the application of the inherently dangerous doctrine to its original concept—protection of innocent third parties not involved in the activity. Thus, under the law of those jurisdictions, employees of independent contractors may not recover from the landowner by invoking the inherently dangerous exception.

*Id.* The first part of the *Sumners* fundamental fairness test does not call for prospective-only application of *Zueck.*

The second consideration under the *Sumners* fundamental fairness test requires the court to determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective application. *Sumners,* 701 S.W.2d at 724. The court in *Aubuchon* found that:

> The purpose of *Zueck* is to promote the workers' compensation system, which is a product of trade-off: the employer (here an independent contractor) forfeits his common law defenses to suits against him for his employee's injuries and assumes automatic liability; the employee forfeits his right to a potentially lucrative common law judgment in return for assured compensation. *See Zueck* [809 S.W.2d] at 388. Retrospective operation enhances the purpose and effect of *Zueck* by upholding the balance the legislature previously struck in enacting the workers' compensation law.

*Aubuchon,* 820 S.W.2d at 617.

The Praysons agree that consideration of the relationship between workers' compensation law and the impact of the inherently dangerous activity doctrine was "an element" of the supreme court's decision in *Zueck,* but argue that it was not the "primary purpose" of *Zueck.* Rather, they

contend the intent of the supreme court in *Zueck* was to eliminate the untenable position in which "innocent, non-expert" landowners who sought expert assistance from independent contractors had been placed by the application of the exception to employees of the contractors.[1]

Without addressing the validity of the argument advanced by the Praysons as the primary purpose of *Zueck*, this Court notes that although elimination of the difficult position the exception placed non-expert owners in may have been a consideration which lead to the holding in *Zueck*, it was not the primary purpose of the rule announced in *Zueck*. The supreme court limited its holding in *Zueck* to those employees of independent contractors *covered by workers' compensation*. *Zueck*, 809 S.W.2d at 390. If the primary purpose of *Zueck* had been that which the Praysons suggest, it is doubtful the supreme court would have limited its holding as it did. Rather, the supreme court would have held the exception inapplicable to employees of independent contractors retained by non-expert landowners, regardless whether such employees are covered by workers' compensation.

*Aubuchon* determined that retroactive application of *Zueck* enhances its purpose and effect "by upholding the balance the legislature previously struck in enacting the workers' compensation law." *Aubuchon*, 820 S.W.2d at 617. Retroactive application corrects the distortion of the workers' compensation law created by application of the exception to employees of independent contractors who are covered by workers' compensation laws, as the supreme court found in *Zueck:*

> The application of the inherently dangerous exception also distorts workers' compensation laws. The exception, if extended to employees of an independent contractor, permits a limited class of injured workers—those who can convince a judge that their work for an independent contractor was inherently dangerous—to avoid the limitations of workers' compensation. This is contrary to the fact that the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger and despite the intended exclusivity of workers' compensation as an injured worker's remedy.

*Zueck*, 809 S.W.2d at 390 (footnote omitted). Permitting the Praysons to avoid the provision that workers' compensation is the single source of recovery by allowing them to pursue an additional enhanced common law judgment when an employee of KCP & L who is injured or killed during the performance of the same work done by Mr. Bunger would be limited to workers' compensation benefits would be inequitable. Retroactive application of *Zueck* to this case resolves that inequity.

Another factor considered by the supreme court in *Zueck* was the reality that owners pay for the workers' compensation insurance of independent contractors since such amounts are included in the independent contractor's bid. *Id.* at 389. Retroactive application of *Zueck* would give KCP & L benefit of its premium payment for workers' compensation insurance (through its payment of B & L's contract price) out of which the Prayson's benefits as Mr. Bunger's survivors were paid.

Applying *Zueck* to this case eliminates other inequities, considered by the *Zueck* court, that would result from including Mr. Bunger within the inherently dangerous exception. It eliminates the inequity that would result if KCP & L were found "vicariously liable" under the exception, were required to pay the judgment, and then were deprived of indemnity from B & L, necessarily adjudged negligent, by reason of B & L's immunity under the workers'

---

1. *See Zueck*, 809 S.W.2d at 387–88, where the court notes that the application of the inherently dangerous activity exception for employees of independent contractors creates an anomaly in the law. The court remarks that by permitting employees of independent contractors to invoke the exception, the law actually (1) rewards owners who, despite their lack of expertise, choose to perform work negligently resulting in injury to workers, (2) increases the risks to innocent third parties, and (3) punishes owners who seek expert assistance in an effort to avoid liability for injury. *Id.*

compensation laws. *See Zueck*, 809 S.W.2d at 388–89. Even if KCP & L were granted indemnity, as it contends it is entitled to by reason of its contract with B & L,[2] the inequities would continue, for B & L would be deprived of the immunity other employers are afforded under the workers' compensation laws.

The purpose and effect of *Zueck* will only be enhanced and cannot be retarded by applying its holding in this case. The second factor of the *Sumners* fairness test does not call for prospective-only operation of *Zueck.*

The third factor of the three-part fundamental fairness test announced in *Sumners* requires the court to balance the interests of those who may be affected by the change in the law. *Sumners*, 701 S.W.2d at 724. Specifically, the court must consider the degree to which parties may have relied on the old rule and weigh the hardships that could result from applying the new rule against the possible hardships to those parties who would be denied the benefit of the new rule. *Id.*

The Praysons argue that because they relied on the law as it existed prior to *Zueck* in deciding whether to file suit and in choosing what form their suit would take, fundamental fairness requires the rule in *Zueck* not be applied to them. The Praysons cite the supreme court's decision in *Trans UCU, Inc. v. Director of Revenue,* 808 S.W.2d 374 (Mo. banc 1991), as support for their contention. Reliance of which *Sumners* speaks is a party's reliance upon *settled* law in governing his or her conduct *before* an incident which gives rise to litigation occurs, not in deciding whether to pursue litigation after the incident. *Trans UCU* is not inconsistent with this Court's interpretation.

In *Trans UCU*, Trans UCU, Inc. (UCU), a Delaware corporation with its principal office in Kansas City, Missouri, purchased and took delivery of an airplane in Wilmington, Delaware in 1986, believing, in reliance on the supreme court's ruling in *King v. L & L Marine Service, Inc.*, 647 S.W.2d 524 (Mo. banc 1983), that by pur-

chasing the plane out-of-state and by immediately placing it in interstate commerce the transaction was outside the reach of the Missouri use tax laws. *Trans UCU*, 808 S.W.2d at 375. In 1987, the supreme court overruled *L & L Marine* in *Director of Revenue v. Superior Aircraft Leasing Co.*, 734 S.W.2d 504 (Mo. banc 1987), making transactions such as the one UCU engaged in taxable under Missouri's use tax. *Trans UCU*, 808 S.W.2d at 375. Based on the advice of its counsel, UCU believed that the *Superior Aircraft* ruling was prospective only and did not file a use tax return in Missouri in connection with its purchase and use of the aircraft. *Id.*

In 1988 the Director of Revenue attempted to apply *Superior Aircraft* retroactively and collect over $60,000 in use tax, plus interest and penalties, from UCU. *Id.* at 375–76. UCU protested, and the supreme court applied the *Sumners* tests and found that because UCU detrimentally relied on the law before *Superior Aircraft* and on the advice of its own counsel after *Superior Aircraft*, it would be fundamentally unfair to apply *Superior Aircraft* retroactively to UCU. *Id.* at 377–78.

UCU relied on *L & L Marine* in deciding to purchase the airplane in Delaware and in deciding not to file a Missouri use tax return—conduct that occurred *before* litigation had begun. *Trans UCU* does not support the Prayson's argument that reliance on an old rule in bringing suit and in determining the form of litigation is the type of reliance in *Sumners* requiring prospective-only application of a new law.

Furthermore, UCU relied upon *settled* law; the Praysons did not. The supreme court had not addressed the impact of workers' compensation laws upon the inherently dangerous activity exception before *Zueck*. *Zueck*, 809 S.W.2d at 388–90.

Examination of the hardships each party will incur upon the application of *Zueck* to this case is not persuasive to stray from the general rule of retroactivity. The application of *Zueck* still permits the Praysons' recovery for Mr. Bunger's death

2. This Court does not address that claim.

through workers' compensation. Both *Sumners* tests require that *Zueck* be applied retroactively.

As their final arguments under point I, the Praysons argue that (1) retroactive application of a change in tort law effected by a judicial decision constitutes a denial of equal protection, and (2) the trial court's granting of the j.n.o.v. constituted an unjust taking because the jury verdict in favor of the Praysons became a vested property right under the due process clauses. The Praysons fail to cite Missouri authority for either of these arguments. Point I is denied.

## II.

■ The Praysons contend as their second point on appeal that the trial court erred in denying their motion requesting leave to file their Second Amended Petition.[3] The trial court denied the motion because the court found that Count I of the petition failed to state a cause of action.

KCP & L contends that even if the trial court erred in finding Count I of the Praysons' second amended petition failed to state a cause of action, the Praysons failed to preserve such error by filing a third amended petition which did not include the Count I allegations. KCP & L argues the Praysons "abandoned" their Count I allegations and waived any error committed by the trial court by filing a third amendment.

■ The general rule is that an amended petition operates as an abandonment of the original petition. *Scott v. Gibbons*, 611 S.W.2d 387, 389 (Mo.App.1981). However, Missouri courts note an exception to the general rule. In *R.C. v. Southwestern Bell Telephone Co.*, 759 S.W.2d 617 (Mo. App.1988), R.C. brought a lawsuit against several defendants. *Id.* at 619. The counts against some of the defendants were dismissed because the trial court held that the defendants were immune from suit. *Id.* As the appellate court noted, "[n]o amendment could correct that prob-

lem." *Id.* When R.C. amended her allegations against the remaining defendants, she did not include the previously dismissed defendants and "thereby force those defendants and the court to repeat the dismissal procedure they had previously engaged in." *Id.* The appellate court in *R.C.* found that R.C. did not abandon her cause of action against the dismissed defendants by amending her petition. *Id.* The court held:

> Where the reason for dismissal is not correctible [sic] by an amended pleading and the case remains pending against other defendants, the court and the parties should not be required to engage in useless procedural gestures in order to preserve the propriety of the dismissal for review.

*Id.* at 619–20.

An analogous situation is presented in this case. The trial court denied the Praysons' motion for leave to file their second amended petition because the trial court found that Count I failed to state a cause of action. From the transcript of the hearing, it is apparent that the trial judge believed that *Ballinger* precluded the Praysons from bringing a claim of direct liability against KCP & L. *Ballinger*, though, only eliminates the *Smith* requirement of showing negligence on the part of the owner to prevail in a claim based on pure vicarious liability. *Ballinger*, 788 S.W.2d at 511. Neither *Ballinger* nor *Zueck* preclude a claim of direct liability on the part of an owner for injury or death to a person engaged in inherently dangerous activities on the owner's premises at the owner's behest. *See Zueck*, 809 S.W.2d at 391 (Blackmar, C.J., concurring).

The trial judge would not allow Count I to be filed. Rather than seek leave to file a third amended petition containing the Count I and then go through the exercise of having the trial court deny their motion again, the Praysons proceeded with their

---

**3.** The Praysons contend in their second point relied on that the trial court erred in "DISMISSING APPELLANT'S FIRST COUNT IN THEIR PROPOSED SECOND AMENDED PETITION," but the trial court actually denied a motion the Praysons filed seeking leave to file a second amended petition.

Third Amended Petition on Count II, alleging only the vicarious liability of KCP & L.

That the Praysons did not abandon Count I by filing the Third Amended Petition was even recognized by the trial judge, who stated "I have ... allowed the filing of a third amended petition which is done without [the Praysons] waiving any of the issues that are presented by their request to file the second amended petition," and "I agree with [the Praysons] there was no abandonment in what they've done since it was coerced and not voluntary."

■ In determining whether the Praysons stated a cause of action in Count I, every pleaded fact and every favorable inference which may reasonably be drawn from the facts pleaded is assumed true. *Kennedy v. Kennedy*, 819 S.W.2d 406, 408 (Mo.App.1991). If the facts pleaded and the reasonable inferences show any ground that would entitle the Praysons to relief, the motion should not have been denied. *Id.*

■ While *Zueck* forecloses any claim against an owner under the inherently dangerous activity exception for *vicarious* liability, a claim against an owner for direct liability based on the owner's own negligence is still available. *See Zueck*, 809 S.W.2d at 391 (Blackmar, C.J., concurring). Mr. Bunger, as an employee of B & L, working on property owned by KCP & L was a business invitee. *Schneider v. Union Elec. Co.*, 805 S.W.2d 222, 226 (Mo. App.1991). His status as business invitee entitled him to KCP & L's ordinary care to make its premises reasonably safe for his use. *Id.* To make a case against an owner, an employee of an independent contractor, as a business invitee, must plead and prove (1) a dangerous condition existing on the owner's property which involves an unreasonable risk, (2) that the owner knew or by using ordinary care should have known of the condition, (3) that the owner failed to use ordinary care in removing or warning of the danger, and (4) as a result the employee sustained injury. *Id.*

■ Count I of the Praysons' Second Amended Petition purports to allege the Praysons' cause of action against KCP & L for direct negligence. The Count alleges that Mr. Prayson was electrocuted when the non-insulated wrench he was holding slipped off a de-energized fuze mounting and contacted a fuze mounting that was energized. Mr. Prayson was installing lightning accessories and squirrel-proofing on a transformer when he was killed. Paragraph 7 of Count I alleges that installing lightning arrestors and squirrel-proofing transformers on utility poles (the work B & L was hired to perform) was an inherently dangerous activity and involved a particular risk of injury to B & L employees performing the work. Paragraph 3 alleges KCP & L was and is in the business of generating, transmitting, distributing, and selling electricity. The specific allegations of negligence are listed in paragraph 9(a)–(e). Paragraph 9(a)–(e) state that KCP & L negligently:

(a) failed to provide existing Kansas City Power & Light Company safety materials such as Safety Rules for Outside Physical Employees to employees of B & L Electric, Inc. such as Larry Dean Bunger;

(b) failed to monitor B & L Electric, Inc. to insure all work was performed in accordance with applicable safety standards and/or safety rules;

(c) failed to promulgate standarized [sic] procedures for squirrel proofing transformers which incorporated safe methods of performing work and provide such procedures to B & L Electric, Inc.;

(d) failed to supervise and/or monitor B & L Electric, Inc. to insure employees of B & L Electric, Inc. were utilizing insulated safety devices such as gloves or blankets when working in an energized area on overhead power lines and equipment;

(e) failed to supervise and/or monitor B & L Electric, Inc. to insure that line work on or around energized lines and equipment was performed by qualified employee(s) of B & L Electric, Inc.

B & L was an independent contractor. As an independent contractor, KCP & L was not liable for damages caused by the

tortious acts or omissions of B & L. *Nance v. Leritz*, 785 S.W.2d 790, 792–93 (Mo.App.1990). KCP & L was not obligated to supervise the work performance of independent contractor B & L to determine that it was being performed in a manner that provided a safe work environment for B & L's employees. *Martin v. First Nat'l of Independence Co.*, 372 S.W.2d 919, 923 (Mo.1963); *McHugh v. National Lead Co.*, 60 F.Supp. 17, 23 (E.D.Mo.1945), *appeal dismissed*, 154 F.2d 829 (8th Cir.1946). Had KCP & L supervised or monitored B & L as the Praysons' allege it should have, KCP & L would have altered its independent contractor relationship with B & L and may have incurred liability. *Werdehausen v. Union Elec. Co.*, 801 S.W.2d 358, 364 (Mo.App.1990). Those allegations in paragraph 9 of Count I that KCP & L should have supervised and/or monitored B & L fail to state a cause of action.

█ Assuming that a reasonable inference from the allegations is that KCP & L knew or should have known that the work it hired B & L to do required activity near dangerous electrically charged transformers and utility power lines and involved an inherently dangerous activity and a high risk of injury to employees of B & L, one cannot then reasonably assume from the specific allegations of negligence that B & L and Mr. Bunger were unaware of the danger of electrical current in transformers and utility power lines with which Mr. Bunger worked. B & L was hired as an independent contractor by KCP & L to place devices on or near electrical lines. Mr. Bunger's job included the placement of the devices on transformers located on utility power lines. Paragraph 8 of Count I of the proposed amended petition states that Mr. Bunger had de-energized the transformer on which he was working at the time of his death by opening the fuse on the fuse mounting. Mr. Bunger demonstrated knowledge necessary to perform his job safely. Mr. Bunger's knowledge of the danger was at least equal to that of KCP & L. For KCP & L to warn B & L and Mr. Bunger of the danger of electrical current in utility power lines and transformers on or near which work was to be performed would have been to warn them of an obvious danger which they already knew. B & L's knowledge of the danger and the willingness of its employees to work within proximity of the danger was probably a reason for which the company was hired. The owner of a premises is under no duty to warn of dangers which an employee of an independent contractor was deemed to have foreseen as necessarily incidental to his employment. *McHugh v. National Lead Co.*, 60 F.Supp. at 22.

Count I of Appellant's Second Amended Petition did not state a cause of action. The trial court did not err in denying the Praysons' motion for leave to file their second amended petition.

The trial court's judgment n.o.v. is affirmed.

All concur.